# UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
### DISTRICT OF KANSAS

259 ROBERT J. DOLE U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KS 66101

**SKYLER B. O'HARA**
CLERK
E-MAIL: Skyler_OHara@ksd.uscourts.gov
(913) 735-2220

204 U.S.COURTHOUSE
401 N. MARKET
WICHITA, KS 67202

February 26, 2025

**STEPHANIE MICKELSEN**
CHIEF DEPUTY CLERK
E-MAIL: Stephanie_Mickelsen@ksd.uscourts.gov
(913) 735-2235

490 U.S.COURTHOUSE
444 NE QUINCY
TOPEKA, KS 66683

**SEE NOTICE OF ELECTRONIC FILING**

Retained Counsel Appeal

RE: Miracle et al v. Hush et al

District Court Case No. 5:23-cv-4056-JAR-GEB

Notice of Appeal filed by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten and Wint Winter

Fee Status: NOT PAID

The following documents are for the parties in connection with the Notice of Interlocutory Appeal: Docket Sheet, Memorandum and Orders (Docs. 54 and 58), and Notice of Interlocutory Appeal.

**RETAINED** Counsel for the appellant is instructed to download the "**Initial Appeal Documents and Instructions**" for this appeal from www.ca10.uscourts.gov. In addition, counsel will need to download the "Designation of Record" form from the Tenth Circuit website. Please follow the instructions for Transcript Order Form (for Appellant only) and Docketing Statement (for Appellant only) regarding Counsel's responsibility for compliance. For specific requirements concerning transcripts, records on appeal, briefs, and appendices to briefs, please refer to the Federal Rules of Appellate Procedure and the Rules of the Tenth Circuit Court of Appeals. Rules of the Tenth Circuit are available at www.ca10.uscourts.gov.

If you have any questions, please contact the Office of the Clerk of the U.S. Court of Appeals in Denver, Colorado at (303) 844-3157.

Sincerely,
SKYLER B. O'HARA
CLERK OF COURT

CC: Clerk, U.S. Court of Appeals

By: s/ M. McGivern, Deputy Clerk

INTERLOCUTORYAPPEAL,SCHEDCONFSET

# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: <u>5:23−cv−04056−JAR−GEB</u>

Miracle et al v. Hush et al
Assigned to: District Judge Julie A. Robinson
Referred to: Magistrate Judge Gwynne E. Birzer
Demand: $75,000
Cause: 18:241 Conspiracy Against Citizen Rights

Date Filed: 07/12/2023
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Amanda Miracle**

represented by **Amanda S. Vogelsberg**
Henson, Hutton, Mudrick, Gragson &
Vogelsberg, LLP
3649 SW Burlingame Road, Suite 200
Topeka, KS 66611−21558
785−232−2200
Fax: 785−232−3344
Alternative Phone:
Cell Phone:
Email: avogelsberg@hhmglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
Henson, Hutton, Mudrick, Gragson &
Vogelsberg, LLP
3649 SW Burlingame Road, Suite 200
Topeka, KS 66611−21558
785−232−2200
Alternative Phone:
Cell Phone:
Email: jpgragson@hhmglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
Henson, Hutton, Mudrick, Gragson &
Vogelsberg, LLP
3649 SW Burlingame Road, Suite 200
Topeka, KS 66611−21558
785−232−2200 ext 213
Fax: 785−232−3344
Alternative Phone:
Cell Phone:

Email: jhutton@hhmglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
Henson, Hutton, Mudrick, Gragson &
Vogelsberg, LLP
3649 SW Burlingame Road, Suite 200
Topeka, KS 66611–21558
785–232–2200
Fax: 785–232–3344
Alternative Phone: 785–383–3193
Cell Phone:
Email: keisenhut@hhmglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Christopher Lovett**                    represented by    **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Michael Behrens**
represented by  **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Rob Catlett**
represented by  **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Dan Colson**                              represented by    **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Charles Emmer**                           represented by    **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Brenda Koerner**                    represented by    **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Sheryl Lidzy**                    represented by    **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Max McCoy**                    represented by     **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

**Plaintiff**

**Michael Morales**              represented by     **Amanda S. Vogelsberg**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27055*
*Bar Status: Active*

<u>**Plaintiff**</u>

**Lynnette Sievert**                    represented by   **Amanda S. Vogelsberg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 23360*
*Bar Status: Active*

**James Phillip Gragson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16103*
*Bar Status: Active*

**John H. Hutton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16573*
*Bar Status: Active*

**Kara Eisenhut**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Bar Number: 27055*
*Bar Status: Active*

V.

**Defendant**

**Ken Hush**                                    represented by   **Matthew Lee Shoger**
*President*                                                      Kansas Attorney General
                                                                Legal Services
                                                                120 SW 10th Avenue, 2nd Floor
                                                                Topeka, KS 66612
                                                                785–296–2215
                                                                Fax: 785–291–3767
                                                                Alternative Phone: 316–209–5135
                                                                Cell Phone: 316–209–5135
                                                                Email: matt.shoger@ag.ks.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 28151*
                                                                *Bar Status: Active*

                                                                **Stanley R. Parker**
                                                                Kansas Attorney General – Topeka
                                                                120 SW 10th Avenue, 2nd Floor
                                                                Topeka, KS 66612
                                                                785–368–8423
                                                                Fax: 785–291–3767
                                                                Alternative Phone:
                                                                Cell Phone: 785–640–2134
                                                                Email: stanley.parker@ag.ks.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 10971*
                                                                *Bar Status: Active*

                                                                **Shon Dennis Qualseth**
                                                                Kansas Department of Health and
                                                                Environment
                                                                Legal Services
                                                                1000 SW Jackson
                                                                Suite 560
                                                                Topeka, KS 66612
                                                                785–296–0696
                                                                Fax: 785–559–4272
                                                                Alternative Phone: 785–281–7601
                                                                Cell Phone: 785–331–7247
                                                                Email: shon.qualseth@kdhe.ks.gov
                                                                *TERMINATED: 11/21/2024*
                                                                *Bar Number: 18369*
                                                                *Bar Status: Active*

**Defendant**

**Emporia State University**
*TERMINATED: 04/10/2024*

represented by **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Kansas Board of Regents, The**
*TERMINATED: 04/10/2024*

represented by **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Brent Thomas**
*Provost and Vice President of Academic
Affairs*

represented by **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Kevin Johnson**                    represented by    **Matthew Lee Shoger**
*General Counsel*                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Number: 28151*
                                                       *Bar Status: Active*

                                                       **Stanley R. Parker**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Number: 10971*
                                                       *Bar Status: Active*

                                                       **Shon Dennis Qualseth**
                                                       (See above for address)
                                                       ***TERMINATED: 11/21/2024***
                                                       *Bar Number: 18369*
                                                       *Bar Status: Active*

**Defendant**

**Steven Lovett**                    represented by    **Matthew Lee Shoger**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Number: 28151*
                                                       *Bar Status: Active*

                                                       **Stanley R. Parker**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Number: 10971*
                                                       *Bar Status: Active*

                                                       **Shon Dennis Qualseth**
                                                       (See above for address)
                                                       ***TERMINATED: 11/21/2024***

*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Julene Miller**                          represented by   **Matthew Lee Shoger**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 28151*
                                                            *Bar Status: Active*

                                                            **Stanley R. Parker**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 10971*
                                                            *Bar Status: Active*

                                                            **Shon Dennis Qualseth**
                                                            (See above for address)
                                                            *TERMINATED: 11/21/2024*
                                                            *Bar Number: 18369*
                                                            *Bar Status: Active*

**Defendant**

**Bill Feuerborn**                         represented by   **Matthew Lee Shoger**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 28151*
                                                            *Bar Status: Active*

                                                            **Stanley R. Parker**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 10971*
                                                            *Bar Status: Active*

                                                            **Shon Dennis Qualseth**
                                                            (See above for address)
                                                            *TERMINATED: 11/21/2024*
                                                            *Bar Number: 18369*
                                                            *Bar Status: Active*

**Defendant**

**Cheryl Harrison–Lee**                    represented by   **Matthew Lee Shoger**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Bar Number: 28151*

*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Shane Bangerter**                    represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Ann Brandau**                    represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Mark Hutton**                              represented by     **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Shellaine Kiblinger**                      represented by     **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Jon Rolph**                                represented by     **Matthew Lee Shoger**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Allen Schmidt**                          represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Helen Van Etten**                        represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Carl Ice**                                    represented by    **Matthew Lee Shoger**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*
                                                *Bar Number: 28151*
                                                *Bar Status: Active*

                                                **Stanley R. Parker**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*
                                                *Bar Number: 10971*
                                                *Bar Status: Active*

                                                **Shon Dennis Qualseth**
                                                (See above for address)
                                                *TERMINATED: 11/21/2024*
                                                *Bar Number: 18369*
                                                *Bar Status: Active*

**Defendant**

**Cynthia Lane**                                represented by    **Matthew Lee Shoger**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*
                                                *Bar Number: 28151*
                                                *Bar Status: Active*

                                                **Stanley R. Parker**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*
                                                *Bar Number: 10971*
                                                *Bar Status: Active*

                                                **Shon Dennis Qualseth**
                                                (See above for address)
                                                *TERMINATED: 11/21/2024*
                                                *Bar Number: 18369*
                                                *Bar Status: Active*

**Defendant**

**Blake Benson**                    represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Diana Mendoza**                    represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
*TERMINATED: 11/21/2024*
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**Wint Winter**                    represented by    **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Stanley R. Parker**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**John Doe**                          represented by   **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

**Defendant**

**John Dicus**                        represented by   **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Shon Dennis Qualseth**
(See above for address)
***TERMINATED: 11/21/2024***
*Bar Number: 18369*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 07/12/2023 | 1 | COMPLAINT with trial location of Topeka (Filing fee $402, Internet Payment Receipt Number AKSDC−6104001.), filed by Brenda Koerner, Christopher Lovett, Amanda Miracle, Michael Morales, Lynnette Sievert, Charles Emmer, Michael Behrens, Max McCoy, Sheryl Lidzy, Rob Catlett, Dan Colson. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Gragson, |

| | | |
|---|---|---|
| | | James) (Entered: 07/12/2023) |
| 07/12/2023 | 2 | CIVIL COVER SHEET by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Gragson, James) (Entered: 07/12/2023) |
| 07/13/2023 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Daniel D. Crabtree and Magistrate Judge Gwynne E. Birzer for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) **NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at https://www.uscourts.gov/file/459/download. (nao) (Entered: 07/13/2023)** |
| 08/04/2023 | | SUMMONS ISSUED as to Shane Bangerter, Blake Benson, Ann Brandau, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kansas Board of Regents, The, Shellaine Kiblinger, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Summonses issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nao) (Entered: 08/04/2023) |
| 08/04/2023 | | SUMMONS ISSUED as to Kevin Johnson. (Summons issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nao) (Entered: 08/04/2023) |
| 08/07/2023 | | ALIAS SUMMONS ISSUED as to Brent Thomas. (Summons issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jk) (Entered: 08/07/2023) |
| 08/11/2023 | 3 | ENTRY OF APPEARANCE by Shon D. Qualseth on behalf of Shane Bangerter, Blake Benson, Ann Brandau, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Qualseth, Shon) (Entered: 08/11/2023) |
| 08/11/2023 | 4 | ENTRY OF APPEARANCE by Stanley R. Parker on behalf of Shane Bangerter, Blake Benson, Ann Brandau, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Parker, Stanley) (Entered: 08/11/2023) |
| 08/15/2023 | | SUMMONS ISSUED as to Cynthia Lane. (Summons issued to Attorney for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to counsel for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jsh) (Entered: 08/15/2023) |
| 09/28/2023 | 5 | |

| | | ENTRY OF APPEARANCE by Shon D. Qualseth on behalf of All Defendants. (Qualseth, Shon) (Entered: 09/28/2023) |
|---|---|---|
| 09/28/2023 | 6 | ENTRY OF APPEARANCE by Matthew L. Shoger on behalf of All Defendants. (Shoger, Matthew) Modified on 9/29/2023 to correct attorney of record to match filing. (nac) (Entered: 09/28/2023) |
| 09/29/2023 | 7 | ANSWER to Complaint by Shane Bangerter, Blake Benson, John Doe, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Qualseth, Shon) (Entered: 09/29/2023) |
| 10/11/2023 | 8 | INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Scheduling Conference set for 11/28/2023 at 10:00 AM by telephone before Magistrate Judge Gwynne E. Birzer. Participants shall dial into the conference call at 888–363–4749, enter access code 9686294#, and follow the prompts to join the call. Rule 26 Initial Disclosures and Proposed Scheduling Order due 11/21/2023. Signed by Magistrate Judge Gwynne E. Birzer on 10/11/23. (ala) (Entered: 10/11/2023) |
| 11/13/2023 | 9 | MOTION to Stay Discovery by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Doe, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Qualseth, Shon) (Entered: 11/13/2023) |
| 11/16/2023 | 10 | MOTION to Exceed Page Limit by Defendants Shane Bangerter, Blake Benson, Ann Brandau, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Qualseth, Shon) (Entered: 11/16/2023) |
| 11/20/2023 | 11 | RESPONSE MEMORANDUM IN OPPOSITION by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert re 9 Motion to Stay Discovery. (Gragson, James) (Entered: 11/20/2023) |
| 11/20/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 10 Motion to Exceed Page Limit. The motion will be resolved by the District Judge. (kf)** (Entered: 11/20/2023) |
| 11/20/2023 | 12 | ORDER granting 10 Motion to Exceed Page Limit. Defendants may exceed the page limit under D. Kan. Rule 7.1(d)(3) and file up to 30 pages with their Motion for Judgment on the Pleadings. Signed by District Judge Daniel D. Crabtree on 11/20/2023. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (mig) (Entered: 11/20/2023) |
| 11/20/2023 | 13 | MOTION for Judgment on the Pleadings by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Doe, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 |

| | | |
|---|---|---|
| | | Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K)(Qualseth, Shon) (Entered: 11/20/2023) |
| 11/21/2023 | 14 | NOTICE OF CANCELLED HEARING: Due to a pending Motion to Stay Discovery (ECF No. <u>9</u> ) which is not ripe, the Scheduling Conference on 11/28/2023 at 10:00 a.m. is CANCELLED. The Scheduling Conference will be rescheduled after decision on the motion, as necessary. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 11/21/2023) |
| 11/27/2023 | <u>15</u> | REPLY TO RESPONSE TO MOTION by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Doe, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter re <u>9</u> Motion to Stay Discovery. (Qualseth, Shon) (Entered: 11/27/2023) |
| 12/06/2023 | <u>16</u> | UNOPPOSED MOTION for Extension of Time to File Response as to <u>13</u> Motion for Judgment on the Pleadings by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Gragson, James) (Entered: 12/06/2023) |
| 12/06/2023 | <u>17</u> | MOTION to Exceed Page Limit by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Gragson, James) (Entered: 12/06/2023) |
| 12/06/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to <u>16</u> Unopposed Motion for Extension of Time to File Response as to <u>13</u> Motion for Judgment on the Pleadings and <u>17</u> Motion to Exceed Page Limit. The motions will be resolved by the District Judge. (kf)** (Entered: 12/06/2023) |
| 12/07/2023 | 18 | ORDER granting <u>16</u> Unopposed Motion for Extension of Time to Respond to Defendant's Motion for Judgment on the Pleadings (Doc. <u>13</u> ) and <u>17</u> Motion to Exceed Page Limit. Plaintiffs' response deadline is extended to December 26, 2023. The Response may contain 30 pages. Signed by District Judge Daniel D. Crabtree on 12/07/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mig) (Entered: 12/07/2023) |
| 12/11/2023 | 19 | ORDER OF RECUSAL. District Judge Daniel D. Crabtree recused. Case reassigned to District Judge Julie A. Robinson for all further proceedings. Signed by deputy clerk on 12/11/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(mig) (Entered: 12/11/2023) |
| 12/26/2023 | <u>20</u> | MOTION for Leave to File Amended Complaint by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Gragson, James) (Entered: 12/26/2023) |
| 12/26/2023 | <u>21</u> | MEMORANDUM IN SUPPORT of <u>20</u> Motion for Leave to File Amended Complaint by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B)(Gragson, James) (Entered: 12/26/2023) |

| | | |
|---|---|---|
| 12/26/2023 | 22 | RESPONSE MEMORANDUM IN OPPOSITION by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert re 13 Motion for Judgment on the Pleadings. (Gragson, James) (Entered: 12/26/2023) |
| 01/08/2024 | 23 | ORDER. After corresponding with counsel, the Court finds this motion is unopposed. The Court grants 20 Plaintiffs' Motion for Leave to Amend Complaint. Plaintiffs shall file their amended complaint no later than 1/12/2024. Signed by Magistrate Judge Gwynne E. Birzer on 1/8/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/08/2024) |
| 01/09/2024 | 24 | FIRST AMENDED COMPLAINT against All Defendants, filed by Brenda Koerner, Christopher Lovett, Amanda Miracle, Michael Morales, Lynnette Sievert, Charles Emmer, Michael Behrens, Max McCoy, Sheryl Lidzy, Rob Catlett, Dan Colson. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Gragson, James) Modified on 1/9/2024 to remove repeated word "exhibit". (ca) (Entered: 01/09/2024) |
| 01/09/2024 | 25 | FIRST AMENDED COMPLAINT against All Defendants, filed by Brenda Koerner, Christopher Lovett, Amanda Miracle, Michael Morales, Lynnette Sievert, Charles Emmer, Michael Behrens, Max McCoy, Sheryl Lidzy, Rob Catlett, Dan Colson. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Gragson, James) (Entered: 01/09/2024) |
| 01/10/2024 | 26 | ORDER finding as moot 13 Defendants' Motion for Judgment on the Pleadings. In light of the subsequently–filed Amended Complaint, this motion is moot. Signed by District Judge Julie A. Robinson on 1/10/2023. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 01/10/2024) |
| 01/11/2024 | 27 | ORDER finding as moot 9 Defendants' Motion to Stay Discovery ("Motion"). Defendants' Motion was based upon the filing of their Motion for Judgment on the Pleadings (ECF No. 12) which has since been found moot (ECF No. 26) following Plaintiffs filing an Amended Complaint (ECF No. 25). Defendants shall contact the undersigned's chambers to request a conference prior to refiling any motion to stay. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 1/11/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 01/11/2024) |
| 01/18/2024 | 28 | MOTION to Exceed Page Limit by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Qualseth, Shon) (Entered: 01/18/2024) |
| 01/18/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 28 Motion to Exceed Page Limit. The motion will be resolved by the District Judge. (kf)** (Entered: 01/18/2024) |
| 01/19/2024 | 29 | ORDER granting as unopposed and for good cause shown 28 Defendants' Motion for Leave to File Excess Pages. Defendants' forthcoming brief in support of their motion to dismiss shall not exceed thirty (30) pages. Signed by District Judge Julie A. Robinson on 1/19/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document |

| | | |
|---|---|---|
| | | associated with this entry.) (ams) (Entered: 01/19/2024) |
| 01/22/2024 | 30 | CLERKS ORDER EXTENDING TIME until 2/6/2024 for Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, John Doe, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter to answer or otherwise plead. Signed by deputy clerk on 1/22/2024. (nac) (Entered: 01/22/2024) |
| 02/06/2024 | 31 | MOTION to Dismiss by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Emporia State University, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Kansas Board of Regents, The, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K) (Qualseth, Shon) (Entered: 02/06/2024) |
| 02/15/2024 | 32 | MOTION to Exceed Page Limit AND Motion for Extension of Time to Respond to 31 Motion to Dismiss by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Gragson, James) (Entered: 02/15/2024) |
| 02/15/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 32 Motion to Exceed Page Limit and Motion for Extension of Time to Respond to 31 Motion to Dismiss. The motion will be resolved by the District Judge. (kf)** (Entered: 02/15/2024) |
| 02/15/2024 | 33 | ORDER granting Plaintiff's Unopposed 32 Motion for Leave to File Excess Pages and Extension of Time to Respond to Motion to Dismiss 31 . Response deadline is extended to 3/5/24. Plaintiff may exceed the page limit from 15 pages to 30 pages. Signed by District Judge Julie A. Robinson on 2/15/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 02/15/2024) |
| 03/05/2024 | 34 | RESPONSE MEMORANDUM IN OPPOSITION by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert re 31 Motion to Dismiss. (Gragson, James) (Entered: 03/05/2024) |
| 03/18/2024 | 35 | ORDER. The undersigned Magistrate Judge communicated with counsel, via letter dated 2/29/2024, regarding deferred scheduling in this case. Having received no response, the Rule 16 conference will be postponed until after the pending Motion to Dismiss (ECF No. 31) has been decided by the District Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 3/18/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/18/2024) |
| 03/26/2024 | 36 | JOINT MOTION Regarding Scheduling Motion to Amend Complaint and Anticipated Motion to Dismiss by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Gragson, James) (Entered: 03/26/2024) |

| 03/26/2024 | 37 | ORDER granting 36 Joint Motion for Order Regarding Scheduling Motion to Amend Complaint and Anticipated Motion to Dismiss. Plaintiffs shall file their Unopposed Motion for Leave to File Second Amended Complaint no later than 4/5/2024. Signed by Magistrate Judge Gwynne E. Birzer on 3/26/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 03/26/2024) |
|---|---|---|
| 04/05/2024 | 38 | MOTION for Leave to File Second Amended Complaint by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Motion referred to Magistrate Judge Gwynne E. Birzer.) (Gragson, James) (Entered: 04/05/2024) |
| 04/05/2024 | 39 | MEMORANDUM IN SUPPORT of 38 Motion for Leave to File Second Amended Complaint by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Attachments: # 1 Exhibit A, # 2 Exhbit B)(Gragson, James) (Entered: 04/05/2024) |
| 04/08/2024 | 40 | ORDER. After corresponding with counsel, the Court finds this motion is unopposed. The Court grants 38 Plaintiffs' Motion for Leave to File Second Amended Complaint. Plaintiffs shall file their Second Amended Complaint no later than 4/12/2024. Signed by Magistrate Judge Gwynne E. Birzer on 4/8/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 04/08/2024) |
| 04/10/2024 | 41 | SECOND AMENDED COMPLAINT against All Defendants, filed by Brenda Koerner, Christopher Lovett, Amanda Miracle, Michael Morales, Lynnette Sievert, Charles Emmer, Michael Behrens, Max McCoy, Sheryl Lidzy, Rob Catlett, Dan Colson. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Gragson, James) (Entered: 04/10/2024) |
| 04/10/2024 | 42 | ORDER finding as moot 31 Motion to Dismiss based on the filing of the Amended Complaint Doc. 41 . Signed by District Judge Julie A. Robinson on 4/10/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 04/10/2024) |
| 04/23/2024 | 43 | MOTION to Exceed Page Limit by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Shoger, Matthew) (Entered: 04/23/2024) |
| 04/23/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 43 Motion to Exceed Page Limit. The motion will be resolved by the District Judge. (kf)** (Entered: 04/23/2024) |
| 04/24/2024 | 44 | ORDER granting as unopposed and for good cause shown 43 Motion for Leave to File Excess Pages. Defendants' forthcoming brief in support of their motion to dismiss shall not exceed thirty (30) pages. Signed by District Judge Julie A. Robinson on 4/24/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 04/24/2024) |
| 04/24/2024 | 45 | MOTION to Dismiss by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, |

| | | |
|---|---|---|
| | | Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Qualseth, Shon) (Entered: 04/24/2024) |
| 04/30/2024 | 46 | ORDER. Upon review of 45 Defendants' Motion to Dismiss, the Court continues to defer scheduling in this case. The Rule 16 conference will be postponed until after the Motion to Dismiss has been decided by the District Judge. IT IS SO ORDERED. Signed by Magistrate Judge Gwynne E. Birzer on 4/30/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 04/30/2024) |
| 05/03/2024 | 47 | MOTION for Extension of Time to File Response and Motion to Exceed Page Limit as to 45 Motion to Dismiss by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert. (Gragson, James). Added Motion to Exceed Page Limit. (kao) (Entered: 05/03/2024) |
| 05/06/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 47 Motion for Extension of Time to File Response and Motion to Exceed Page Limit as to 45 Motion to Dismiss. The motion will be resolved by the District Judge. (kf)** (Entered: 05/06/2024) |
| 05/08/2024 | 48 | ORDER granting as unopposed and for good cause shown 47 Motion for Extension of Time to File Response and Motion for Leave to File Excess Pages as to 45 Motion to Dismiss for Lack of Jurisdiction and Motion to Dismiss for Failure to State a Claim. Plaintiffs' response deadline is extended to 5/29/2024. Plaintiffs' response may exceed the page limit by 15 pages, for a total page limit of 30 pages. Signed by District Judge Julie A. Robinson on 5/8/2024. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 05/08/2024) |
| 05/29/2024 | 49 | RESPONSE MEMORANDUM IN OPPOSITION by Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, Lynnette Sievert re 45 Motion to Dismiss. (Gragson, James) (Entered: 05/29/2024) |
| 06/06/2024 | 50 | MOTION to Exceed Page Limit by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Shoger, Matthew) (Entered: 06/06/2024) |
| 06/06/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 50 Motion to Exceed Page Limit. The motion will be resolved by the District Judge. (kf)** (Entered: 06/06/2024) |
| 06/07/2024 | 51 | ORDER granting 50 Defendant's Unopposed Motion for Leave to File Excess Pages. Defendant's reply shall not exceed 10 pages. Signed by District Judge Julie A. Robinson on 6/7/24. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 06/07/2024) |
| 06/12/2024 | 52 | REPLY TO RESPONSE TO MOTION by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven |

| | | Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter re 45 Motion to Dismiss. (Qualseth, Shon) Modified on 2/26/2025 to remove Emporia State University and Kansas Board of Regents, The as filers. (mam) (Entered: 06/12/2024) |
|---|---|---|
| 11/21/2024 | 53 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Shon D. Qualseth as to All Defendants. (Qualseth, Shon) (Entered: 11/21/2024) |
| 12/05/2024 | 54 | MEMORANDUM AND ORDER. Defendants' Motion to Dismiss (Doc. 45 ) is granted in part and denied in part. Defendants' motion is granted as to Counts V, VII, and IX. Defendants' motion to dismiss Defendants Thomas, Miller, Harrison–Lee, Kiblinger, Ice, Lane, Winter, Feuerborn, Bangerter, Hutton, Rolph, Schmidt, Brandau, Van Etten, Benson, Mendoza, and Dicus on Count IV is also granted. Defendants' motion to dismiss is otherwise denied. Signed by District Judge Julie A. Robinson on 12/5/2024. (mam) (Entered: 12/05/2024) |
| 12/12/2024 | 55 | MOTION to Reconsider 54 Memorandum and Order by Defendants Ken Hush, Brent Thomas, Kevin Johnson, Steven Lovett, Julene Miller, Bill Feuerborn, Cheryl Harrison–Lee, Shane Bangerter, John Dicus, Ann Brandau, Mark Hutton, Shellaine Kiblinger, Jon Rolph, Allen Schmidt, Helen Van Etten, Carl Ice, Cynthia Lane, Blake Benson, Diana Mendoza, Wint Winter, John Doe. (Shoger, Matthew) Modified on 2/26/2025 to remove Emporia State University and Kansas Board of Regents, The as filers. (mam) (Entered: 12/12/2024) |
| 12/18/2024 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to 55 Motion to Reconsider 54 Memorandum and Order. The motion will be resolved by the District Judge. (ss)** (Entered: 12/18/2024) |
| 12/26/2024 | 56 | RESPONSE IN OPPOSITION by Plaintiffs Michael Morales, Lynnette Sievert, Amanda Miracle, Christopher Lovett, Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Max McCoy re 55 Motion to Reconsider 54 Memorandum and Order. (Gragson, James) (Entered: 12/26/2024) |
| 01/02/2025 | 57 | REPLY TO RESPONSE TO MOTION by Defendants Ken Hush, Brent Thomas, Kevin Johnson, Steven Lovett, Julene Miller, Bill Feuerborn, Cheryl Harrison–Lee, Shane Bangerter, John Dicus, Ann Brandau, Mark Hutton, Shellaine Kiblinger, Jon Rolph, Allen Schmidt, Helen Van Etten, Carl Ice, Cynthia Lane, Blake Benson, Diana Mendoza, Wint Winter, re 55 Motion to Reconsider 54 Memorandum and Order. (Shoger, Matthew) Modified on 1/3/2025 to correct filer names. (nac) (Modified on 2/26/2025 to remove Emporia State University and Kansas Board of Regents, The as filers. (mam) (Entered: 01/02/2025) |
| 02/11/2025 | 58 | MEMORANDUM AND ORDER. Defendants' Motion to Reconsider (Doc. 55 ) is granted in part to the limited extent Defendants seek clarification of the court's property–right ruling, and a correction to the court's reference to "leave without pay" on page 22 of its December 5 Order. The motion is otherwise denied. Signed by District Judge Julie A. Robinson on 2/11/2025. (mam) (Entered: 02/11/2025) |
| 02/25/2025 | 59 | SECOND INITIAL ORDER REGARDING PLANNING AND SCHEDULING: Fed. R. Civ. P. 1 mandates the "just, speedy, and inexpensive" determination of this action. With this goal in mind, U.S. Magistrate Judge, Gwynne E. Birzer, will conduct a Fed. R. Civ. P. 16 scheduling conference on 4/18/2025 at 11:00 AM. The conference will be held by telephone. Participants shall dial into the conference call at 316–402–0044, enter conference ID 220 054 263#, and follow the prompts to join the call. The parties, in person and/or through counsel, must confer as required by Fed. R. Civ. P. 26(f) by |

| | | 3/28/2025. By 4/11/2025, plaintiffs must submit a red–lined version of the proposed scheduling order that shows all changes to the court's form proposed scheduling order and a clean version of the proposed scheduling order. Both versions of the document must be submitted in Word format as an attachment to an e–mail sent to ksd_birzer_chambers@ksd.uscourts.gov. The parties must serve their Rule 26(a)(1)(A) initial disclosures by 4/11/2025, and email copies of the initial disclosures to the undersigned judge's chambers with the proposed scheduling order. Signed by Magistrate Judge Gwynne E. Birzer on 2/25/2025. (mam) (Entered: 02/25/2025) |
|---|---|---|
| 02/25/2025 | 60 | NOTICE OF INTERLOCUTORY APPEAL as to 54 and 58 Memorandums and Orders by Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (Shoger, Matthew) (Entered: 02/25/2025) |
| 02/26/2025 | | APPEAL FEE STATUS: Filing fee not paid re 60 Notice of Interlocutory Appeal on behalf of Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison–Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten, Wint Winter. (This is a text entry only. There is no.pdf document associated with this entry.)(mam) (Entered: 02/26/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA MIRACLE, et al.,

      Plaintiffs,

      v.                                    Case No. 23-4056-JAR-GEB

KEN HUSH, et al.,

      Defendants.

## MEMORANDUM AND ORDER

Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, and Lynnette Sievert were all tenured professors at Emporia State University when they were notified on September 15, 2022 that their employment would terminate the following May. They bring this civil rights action under 42 U.S.C. §§ 1983 and 1985 for violations of their procedural and substantive due process rights under the Fifth and Fourteenth Amendments, their equal protection rights under the Fourteenth Amendment, and their First Amendment rights. They name as Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten and Wint Winter, who were either Emporia State University ("ESU") officials or on the Kansas Board of Regents ("KBOR") at the time Plaintiffs were terminated.

Before the Court is Defendants' Motion to Dismiss (Doc. 45) the Second Amended Complaint ("SAC"). Defendants move to dismiss under both Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)P(6) for failure to state a claim. The motion

is fully briefed and the Court is prepared to rule.  For the reasons set forth below, the Court

grants in part and denies in part Defendants' motion to dismiss.

## I.    Standards

### A.    Fed. R. Civ. P. 12(b)(1)

Defendants first move to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction under the standing doctrine.  Lack of subject matter jurisdiction is a threshold

defense that must be addressed before any merits-based issues.[1]  Federal courts are courts of

limited jurisdiction and must therefore have a statutory or constitutional basis for exercising

jurisdiction.[2]  The party seeking to invoke federal subject matter jurisdiction has the burden to

establish that jurisdiction is proper,[3] and "[m]ere conclusory allegations of jurisdiction are not

enough."[4]  Specifically, when evaluating standing at the pleading stage, the Court "presumes that

general allegations embrace those specific facts that are necessary to support the claim,"[5] and

"general factual allegations of injury resulting from the defendant's conduct may suffice."[6]

### B.    Fed. R. Civ. P. 12(b)(6)

Defendants also move to dismiss under Rule 12(b)(6).  To survive a motion to dismiss

brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be

true, "raise a right to relief above the speculative level"[7] and must include "enough facts to state

---

[1] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

[2] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[3] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[4] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[5] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, (1957)).

[6] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

a claim for relief that is plausible on its face."[8]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[9]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully" but requires more than "a sheer possibility."[10]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[11]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proved.[12]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[13]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[14]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[15]  "A claim has facial plausibility when the plaintiff pleads factual content

---

[8] *Id.* at 570.

[9] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[11] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[14] *Id.* at 678–79.

[15] *Id.* at 679.

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]

If matters outside the pleadings are reviewed, the Court generally must convert a Rule 12(b)(6) motion to a Fed. R. Civ. P. 56 motion for summary judgment.[17]  However, the Court may consider documents that are attached as exhibits to the complaint,[18] or documents that are referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.[19]  The Court may also take judicial notice of publicly-available court documents and matters of public record without converting a motion to dismiss for failure to state a claim into a motion for summary judgment, so long as those facts are not in dispute,[20] but such "documents may only be considered to show their contents, not to prove the truth of the matters asserted therein."[21]

Plaintiffs attached several documents to the SAC; therefore, the Court can consider them under Rule 10(c) when considering the motion to dismiss.  Defendants attached to their motion eleven documents from related proceedings before the Kansas Office of Administration Hearings ("OAH").  They argue that the Court can consider these documents because they are referenced in the SAC and because the Court can take judicial notice of them.  The Court takes judicial notice of Exhibits 1–11, attached to Defendants' motion to dismiss.  They are all public records from the OAH proceedings discussed in the SAC, and there is no dispute that they were filed in

---

[16] *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).

[17] Fed. R. Civ. P. 12(d).

[18] Fed. R. Civ. P. 10(c).

[19] *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[20] *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[21] *Tal*, 453 F.3d at 1264 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

that proceeding, or that they are authentic. The Court only considers them to show their contents, not for the truth of the matters asserted therein.

## II.    Background

The following facts are alleged in the SAC or are part of the exhibits attached to the SAC and Defendants' motion to dismiss.[22]

The KBOR is an official body of the state of Kansas charged with supervising and administering postsecondary education institutions, including ESU, in the Kansas Regents System under the Kansas Higher Education Coordination Act.[23] Defendants Harrison-Lee, Kiblinger, Ice, Lane, Winter, Feuerborn, Bangerter, Hutton, Rolph, Schmidt, Brandau, Van Etten, Benson, Mendoza, and Dicus were members of the KBOR at all times relevant to this action. Defendant Miller was general counsel for the KBOR, and Defendants John Does were involved in the drafting of the temporary amendments to the KBOR's Suspension, Terminations, and Dismissals policy at issue in this case. These KBOR Defendants are all sued in their individual capacities only.

ESU is a state educational institution overseen by the KBOR and is the present or former employer of Plaintiffs. Defendant Hush was the Interim President or President of ESU at all times relevant to this action. Hush is sued in his individual capacity and in his official capacity for prospective injunctive relief only. Defendant Thomas was Dean of the College of Liberal Arts & Sciences, and/or Provost and Vice President for Academic Affairs at ESU. Defendant Johnson was General Counsel for ESU, as well as a tenured member of the ESU School of

---

[22] The parties present factual assertions in their briefing under the procedure normally reserved for motions for summary judgment—deeming facts "controverted" or "uncontroverted." *See* Fed. R. Civ. P. 56; D. Kan. Rule 56.1. A different standard applies on a motion to dismiss, as recited above. Thus, to the extent the parties' recitation of the facts conflicts with the well-pled allegations in the SAC, the SAC controls.

[23] K.S.A. §§ 74-3201a through -3289.

Business faculty with the academic rank of professor.  Defendant Steven Lovett was the

Associate General Counsel (later reclassified as the Associate General Counsel for Academic

Affairs in 2022) and an Associate Professor of Business Law and Ethics at ESU.  Thomas,

Johnson, and Steven Lovett are sued in their individual capacities only.

Before January 21, 2021, ESU policy mandated that faculty who have been awarded

tenure "should be terminated only for adequate cause, except in the case of program or unit

discontinuance or under extraordinary circumstances because of financial exigency."[24]  Prior to

January 21, 2022, all Plaintiffs had earned tenure under ESU's policies.

On January 20, 2021, KBOR held a meeting, during which it was presented with

proposed temporary amendments to the KBOR's Suspensions, Terminations, and Dismissal

policy ("Workforce Management Plan" or "WMP"), which provided in part:

> In light of the extreme financial pressures placed on the state
> universities due to the COVID-19 pandemic, decreased program
> and university enrollment, and state fiscal issues, effective
> immediately through December 31, 2022 and notwithstanding any
> other Board or institutional policy, any state university employee,
> including a tenured faculty member, may be suspended, dismissed,
> or terminated from employment by their respective university.
> Such terminations, suspensions, or dismissals shall follow the
> procedure set forth below.  Declaration of financial exigency and
> the processes associated with declaration of financial exigency
> shall not be a prerequisite to any suspension, dismissal, or
> termination authorized by this provision, and no existing
> university policy hearing procedures shall apply to such
> decisions.[25]

---

[24] Doc. 41 ¶ 47; Doc. 41-2 at 15.  Both parties mistakenly refer to this as the KBOR policy.  The cited language is to the ESU University Policy Manual attached to the SAC.  Doc. 41-2.  "[W]e accept as true Plaintiff's allegations except when directly contracted by the attached exhibits."  *Est. of Ronquillo ex rel. Est. of Sanchez v. City & Cnty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017).  Nonetheless, it is reasonable to infer that this ESU policy derived from the KBOR's policy on tenure given the allegations in the SAC that ESU policy was subject to approval by the KBOR.

[25] Doc. 41-3 at 14.

According to the meeting minutes, KBOR General Counsel Miller presented the proposal "because of the extreme financial pressures that the state universities are facing due to the COVID-19 pandemic, decreased program and university enrollments, and the state's declining fiscal support."[26] Miller told the KBOR that "the proposed amendments would create an additional tool for the CEOs to use as they deal with the financial challenges at the universities."[27] The WMP applied to all university employees statewide, and any university CEO who chose to implement the policy would have 45 days after the KBOR's approval to submit a framework for that university to make decisions under the policy. During the presentation, several Regents expressed concern about financial challenges facing Kansas universities. KBOR approved the WMP unanimously with an expiration date of December 31, 2022.

During the KBOR's May 18–19, 2022 meeting, it voted to remove the July 1, 2021 deadline for universities to propose a framework for decision-making under the WMP, recognizing that "enrollment and financial challenges are still a concern."[28]

During the KBOR's September 14–15, 2022 meeting, Hush and Thomas presented ESU's Framework for the WMP ("ESU Framework"). Hush represented to the KBOR that ESU had communicated with its faculty and staff about its plan to review ESU's operations, which included looking at ESU's programs and curriculum offerings. Hush claimed that ESU held in-person forums to gather feedback, sent campus-wide emails setting forth ESU's intentions, and

---

[26] Doc. 41 ¶ 3 (quoting Doc. 41-3 at 12).

[27] Doc. 41-3 at 12.

[28] Doc. 41 ¶ 64; Doc. 41-4 at 2–3.

asked faculty and staff to provide feedback on how ESU should respond to "regional economic needs."[29]

Hush explained at this meeting that, in the past, ESU had taken measures such as hiring freezes, spending restrictions, and voluntary retirement opportunities to address financial challenges. ESU had repeatedly absorbed budget cuts over the years by reducing its operating budgets, eliminating annual equipment funds, and eliminating positions. Hush told the KBOR that those prior measures had pushed ESU's financial challenges forward but did not resolve them. Hush asserted that the WMP would allow ESU to "align resources and invest into growth areas by doubling down in those programs that will move the University forward."[30] Hush advised the KBOR that about seven percent of ESU employees would be impacted by the policy.

ESU's Framework identified increased costs and financial pressure as a basis for the change:

> While the University is not facing financial exigency, the financial and market situations do require a prudent review and restructuring, which will require modification, reorganization, suspension, or elimination of certain operations, programs and curriculum, which may require immediate action notwithstanding any other Board or institutional policy.[31]

The ESU Framework itself provided:

> *A decision to suspend, dismiss, or terminate any university employee shall be based on factors such as, but not limited to*:
>
> - Low enrollment.
> - Cost of operations.
> - Reduction in revenues for specific departments or schools.
> - Current or future market considerations as to the need for a program or department.

---

[29] Doc. 41-11 at 3.

[30] *Id.*

[31] Doc. 41-12 at 1.

- Restructuring of a program, department, or school as
  determined to be necessary by the university.
- Realignment of resources.
- Performance evaluations.
- Teaching and research productivity.
- Low service productivity.

*A decision for action must be made in consideration of the
following*:

- Relevant accreditation requirements for the program, school, or
  college.
- Course availability to students in order to complete degree
  requirements.  Course availability means students can take
  necessary courses either at ESU or through another university
  or community college in Kansas.[32]

The ESU Framework also provided for certain notice and appeal procedures to the OAH.  The

KBOR approved the ESU Framework at the September meeting, with Lane noting that the policy

should be used "sparingly."[33]

On September 15, 2022, the same day that the KBOR approved the ESU Framework,

ESU provided termination letters to all Plaintiffs stating that their ESU employment would end

on May 16, 2023.  The form letters were substantively identical.  They identified the "extreme

financial pressures accelerated by COVID-19 pandemic, decreased program and university

enrollment, continuing and ongoing increases in the cost of operations across campus, and

substantive changes in the educational marketplace."[34]  The letters stated further that,

Specifically, this action is based on factors such as, but not limited
to:
- Low enrollment.
- Cost of operations.
- Restructuring of a program, department, or school as
  determined to be necessary by the university.

---

[32] *Id.* at 1–2.

[33] Doc. 41-11 at 4.

[34] Doc. 41 ¶ 75.

Secondary considerations may include:
- Reduction in revenues for specific departments or schools.
- Current or future market considerations as to the need for a program or department.
- Realignment of resources.
- Performance evaluations.
- Teaching and research productivity.
- Low service productivity . . . .[35]

The letters included information about Plaintiffs' rights to appeal and how to appeal, and each enclosed a copy of the ESU Framework. The letters were all signed by Hush in his capacity as President of ESU. Prior to their terminations, Plaintiffs attended organizational meetings to discuss the WMP, and several worked on obtaining signatures for unionization. The ESU Defendants and at least some of the KBOR Defendants would have been aware that McCoy, Behrens, Lidzy, Koerner, Lovett, Sievert, Morales, Catlett, and Colson were advocates or perceived to be advocates of unionization.

Plaintiffs all exercised their right to appeal the termination decisions to the OAH, which conducted hearings between January 18 and March 2, 2023. The OAH affirmed the termination decisions for four Plaintiffs: Koerner, Lidzy, Lovett, and McCoy. The OAH reversed the termination decisions for Behrens, Catlett, Colson, Emmer, Miracle, Morales, and Sievert. ESU filed petitions to review the seven reversals to the Lyon County, Kansas District Court under K.S.A. § 77-610, which remain pending. In their answers to the state court petitions, each Plaintiff raised constitutional challenges to ESU's termination decisions. Before these appeals could be decided, Plaintiffs filed their original Complaint in this case on July 12, 2023, alleging claims under 42 U.S.C. §§ 1983 and 1985 stemming from their terminations. Plaintiffs seek damages and attorneys' fees from the individual Defendants. Plaintiffs seek prospective

---

[35] *Id.*

injunctive relief against Hush in his official capacity in the form of reinstatement and return of all benefits, conditions, duties, and responsibilities of employment each Plaintiff enjoyed and maintained before their termination.

## III. Discussion

In the SAC, Plaintiffs allege the following claims under 42 U.S.C. § 1983: (1) Count I for violation of procedural due process under the Fifth and Fourteenth Amendments; (2) Count II for violation of substantive due process under the Fifth and Fourteenth Amendments; (3) Count III for civil conspiracy to deprive Plaintiffs' of their constitutionally-protected property right in tenure; (4) Count IV for violation of their liberty interests in violation of the Fourteenth Amendment; (5) Count VI for violation of equal protection rights in violation of the Fourteenth Amendment; (6) Count VIII for violation of freedom-of-association rights in violation of the First Amendment; and (7) Count X for civil conspiracy.  Plaintiff also allege three conspiracy claims under 42 U.S.C. § 1985: (1) Count V for violation of liberty interest in violation of the Fourteenth Amendment; (2) Count VII for violation of equal protection rights in violation of the Fourteenth Amendment; and (3) Count IX for retaliation for associations and speech in violation of the First Amendment.

As a threshold matter, all Defendants except Hush move to dismiss for lack of standing. Defendants also move to dismiss for failure to state a claim on all claims asserted in the SAC for failure to allege their constitutional claims with sufficient specificity.  Defendants specifically move to dismiss the liberty-interest claims for failure to allege sufficient facts in support of all elements of that claim.  Defendants move to dismiss the § 1985 conspiracy claims for lack of racial animus and under the intra-corporate conspiracy doctrine.  Defendants invoke qualified immunity on the property-interest claims.  Finally, Defendants move to dismiss on issue

preclusion and abstention grounds if the Court finds that any of the claims otherwise survive dismissal under Rules 12(b)(1) and 12(b)(6).

The Court addresses the threshold issue of standing first.  Then, the Court addresses Defendants' plausibility arguments, followed by qualified immunity.  Finally, the Court considers Defendants' issue preclusion and abstention arguments.

## A.      Standing

Article III of the Constitution gives federal courts the power to exercise jurisdiction only over "Cases" and "Controversies."  As the Supreme Court has explained, "[i]n limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law."[36]  For a claim to be justiciable under Article III, "it must present a live controversy, ripe for determination, advanced in a 'clean-cut and concrete form.'"[37]  One of several doctrines reflecting Article III's case-or-controversy limitation on the judicial power is the doctrine of standing.  That doctrine requires federal courts, before considering the merits of an action, to "satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy" as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[38]  Standing is evaluated based on the facts as they exist at the time the complaint is filed.[39]

The Supreme Court has found that the "irreducible constitutional minimum of standing"

---

[36] *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).

[37] *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (quoting *Renne v. Geary*, 501 U.S. 312, 322 (1991)).

[38] *Summers*, 555 U.S. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

[39] *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

contains three elements.[40]  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[41]  Defendants do not dispute that Plaintiffs suffered an injury in fact when they were terminated.  Instead, Defendants argue that Plaintiffs cannot meet the second and third standing elements in this case with respect to each Defendant other than Hush and with respect to each form of relief.

The Supreme Court counsels that "[t]he second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'  If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury."[42]  And causation cannot be speculative; "where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs" there is no causation.[43]  "Plaintiff must show a predictable chain of events leading from the government action to the asserted injury—in other words, that the government action has caused or likely will cause injury in fact to the plaintiff."[44]

Defendants first argue that Plaintiffs' injuries are not fairly traceable to the KBOR Defendants' conduct because they had no involvement in the termination decisions and did not have the power to terminate them; the only person with hiring and termination authority was Hush, as President of ESU.  Plaintiffs respond that their allegations support the causation element of standing because, but for the KBOR's approval of the WMP and ESU's Framework,

---

[40] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560).

[41] *Id.*

[42] *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 288 (2008)).

[43] *Id.*

[44] *Id.* at 385.

their terminations would not have been possible.  First, they allege that ESU and the KBOR are joint employers.  Second, they allege that KBOR policy formed the basis for their tenure rights before the WMP changed them in early 2022.  Moreover, they maintain that Hush, as ESU's executive officer, is subject to the "rules and regulations of the board of regents."[45]

Plaintiffs have alleged sufficient facts to support the standing requirements against all named Defendants.  As the Supreme Court has explained, the causation requirement is designed to "screen[] out plaintiffs who were not injured by the defendant's action.  Without the causation requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of government action."[46]  But this is not a case where uninjured plaintiffs are asking the Court to question the wisdom of the KBOR's policy change, as implemented by ESU.  Under the facts alleged, these Plaintiffs' terminations would not have been possible but for the policy change made by the KBOR, and the ESU Framework devised by ESU officials and approved by the KBOR.  The facts alleged in the SAC, together with the attached KBOR meeting minutes support that the individual members of the KBOR, who unanimously voted for the WMP, understood and intended for the policy change to allow for termination of tenured faculty at Board of Regents' universities.[47]  It was entirely predictable that the downstream effect of the KBOR's conduct would be that ESU would terminate tenured faculty.

The fact that the KBOR members did not personally sign the termination letters does not indicate a lack of causation.  According to the SAC, the virtually identical termination letters parroted the language of the ESU Framework, which was approved by the KBOR and executed

---

[45] Doc. 49 at 7 (citing K.S.A. § 76-725).

[46] *Food & Drug Admin.*, 602 U.S. at 383 (quoting *Allen v. Wright*, 468 U.S. 737, 760 1984)).

[47] *See, e.g.*, Doc. 41 ¶ 73 (stating that at the September 2022 KBOR meeting, Hush told the Regents "that about seven percent of ESU's employees will be impacted" by the ESU Framework).

in furtherance of the KBOR's WMP.  The Court finds that there are sufficient allegations of causation as to the KBOR Defendants to establish standing.  The Court also finds that Plaintiffs' requests for damages against these Defendants will redress their injuries.  This relief will remedy any financial loss suffered by these Plaintiffs as a result of their terminations, and the litigation expenses associated with pursuing those claims.

Defendants next argue that Johnson and Steven Lovett could not have terminated Plaintiffs' employment since they were merely attorneys for ESU.  And they argue that the SAC's only allegation about Thomas's conduct is that he presented the ESU Framework to the KBOR for adoption at its September 2022 meeting.  But Plaintiffs also allege that (1) Johnson and Lovett helped Hush prepare the termination letters they sent to Plaintiffs;[48] (2) Thomas and other ESU administrators attended some of the meetings where Plaintiffs had organized to discuss the WMP and possible unionization;[49] and (3) Thomas not only presented the ESU Framework to the KBOR at that September 2022 meeting, but also discussed ESU's operations and budget.[50]  At the pleading stage, the Court must accept these allegations as true for purposes of evaluating standing.  The Court finds that these are sufficient allegations to demonstrate that Plaintiffs' injuries are fairly traceable to the ESU Defendants' conduct.  And again, obtaining damages and attorneys' fees from these Defendants will remedy Plaintiffs' financial loss associated with their terminations.

For all of the above-stated reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

---

[48] *Id.* ¶ 135.

[49] *Id.* ¶ 66.

[50] *Id.* ¶ 71.

## B.     Failure to State Claims under <u>42 U.S.C. § 1983</u>

Most of Plaintiffs' claims arise under <u>42 U.S.C. § 1983</u>.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[51]  A plaintiff must also "plead that each . . . defendant, through the official's own individual actions, has violated the Constitution."[52]  Defendants move to dismiss the § 1983 claims for failure to specifically allege how each Defendant's conduct violates the Constitution. They also make specific arguments about how the liberty-interest and conspiracy claims fail to state a claim up which relief can be granted.

### 1.     Lack of Specificity

Defendants first argue that Plaintiffs fail to specifically allege the basis of their claims against each Defendant—many of the allegations are about the collective "Defendants" and do not support that each personally participated in the constitutional violations.  To be sure, Plaintiffs must sufficiently allege that each defendant personally participated "in the specific constitutional violation complained of."[53]  Defendants rely on *Robbins v. Oklahoma*[54] for the proposition that this SAC is not clear about "who did what to whom."

But *Robbins* does not support dismissal here.  In *Robbins*, the Tenth Circuit concluded that the plaintiff's collective use of the word "defendants" throughout failed to provide fair notice to the defendants about what particular acts by them were alleged to be unconstitutional.[55]

---

[51] *West v. Atkins*, <u>487 U.S. 42, 48</u> (1988) (citing *Parratt v. Taylor*, <u>451 U.S. 527, 535</u> (1981), *overruled in part on other grounds by Daniels v. Williams*, <u>474 U.S. 327, 330</u>–331 (1986)).

[52] *Ashcroft v. Iqbal*, <u>556 U.S. 662, 676</u> (2009).

[53] *Henry v. Storey*, <u>658 F.3d 1235, 1241</u> (10th Cir. 2011).

[54] <u>519 F.3d 1242</u> (10th Cir. 2008).

[55] *Id.* at 1250.

The court noted that the roles of each individual Defendant in that case were "entirely different in character and therefore [were] mistakenly grouped in a single allegation."[56] That is not the case here. All of the KBOR Defendants are similar in character. They are members of the body that voted to change the KBOR tenure policy through the WMP, and they voted to approve ESU's Framework. The Court finds that collective allegations about these Defendants' conduct with regard to their policy approval is appropriate. Plaintiffs were careful to delineate the various actions of each Regent where applicable. For example, Miller as General Counsel presented the policy to the Regents, certain Regents asked various questions or made relevant statements during the meeting, and Plaintiffs alleged which Regents moved for, seconded, and voted for the policy. This is sufficient to pass muster under Rules 8(a) and 12(b)(6).

While the ESU Defendants' jobs are different, the Court finds that Plaintiffs' allegations against each one specifically apprises them of the conduct on which Plaintiffs' claims are based. As discussed in the standing analysis, Plaintiffs specifically allege that Hush promoted and executed the ESU Framework that gave rise to their terminations. Johnson and Lovett helped Hush prepare the termination letters they sent to Plaintiffs, Thomas and other ESU administrators attended some of the meetings where Plaintiffs had organized to discuss the WMP and possible unionization, and Thomas not only presented the ESU Framework to the KBOR at that September 2022 meeting, but also discussed ESU's operations and budget. The SAC is sufficiently specific as to each Defendant's personal participation.

---

[56] *Id.*

## 2.    Liberty-Interest Claims

Next, Defendants move to dismiss the liberty-interest claims in Counts IV and V, in which Plaintiffs allege that they have a liberty interest in their reputations and careers as tenured public employees, and that Defendants violated that liberty interest by including false and stigmatizing statements in their termination letters. "A public employee has a liberty interest in his good name and reputation as they relate to his continued employment."[57]  A government official deprives an employee of this liberty interest when he makes a defamatory statement about the employee, which causes a significant alteration in the employee's legal status.[58]  Courts refer to these claims as "stigma-plus" claims.[59]  The Tenth Circuit has established the following elements of a stigma-plus claim: (1) a government official "makes a statement that 'impugn[s] the good name, reputation, honor, or integrity of the employee'; (2) the statement is false; (3) the statement is made during the course of termination *and* 'foreclose[s] other employment opportunities'; and (4) the statement is published, in other words disclosed publically [sic]."[60]  If a plaintiff can establish these elements, the employee must be given a name-clearing hearing.[61]  Defendants move to dismiss on the first, third, and fourth elements of this claim.

## 1.    First Element—Stigmatizing Statement

On the first element, Defendants argue that the allegations in the SAC do not support a stigmatizing statement by any of the Defendants about any of the Plaintiffs. Specifically, they

---

[57] *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (citing *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994)).

[58] *See Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (citing *Paul v. Davis*, 424 U.S. 693, 711 (1976)).

[59] *Id.* (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004)).

[60] *McDonald*, 769 F.3d at 1212 (alteration in original) (quoting *Workman*, 32 F.3d at 481).

[61] *Tonkavich v. Kan. Bd. of Regents*, 159 F.3d 504, 526 (10th Cir. 1998).

argue that there are no allegations about statements made by the KBOR Defendants.  They argue further that the termination letters were not stigmatizing because they did not make accusations of dishonesty, immorality,[62] or implicate Plaintiffs' fundamental capacity to perform the job.[63] Plaintiffs respond that the WMP—written and approved by the KBOR Defendants—and the termination letters constitute the stigmatizing statements for purposes of these claims.  Because the termination letters failed to provide specific reasons for the terminations, and suggested that nine criteria "including but not limited to" "performance evaluations," "teaching and research productivity," and "low service productivity," were secondary reasons for the decisions, the termination letters suggested that Plaintiffs were terminated for poor job performance, which negatively impacted their reputations.[64]

In order "[t]o disparage plaintiff's reputation, defendant must make a statement about the plaintiff."[65]  The Court agrees with Defendants that there are no factual allegations in the SAC showing that the KBOR Defendants made any statements about Plaintiffs.  Nor are there any allegations in the SAC that Thomas made a statement about Plaintiffs.  While it is true that the KBOR Defendants wrote and/or approved the WMP, and approved the ESU Framework, they did not sign the termination letters, and there are no facts alleged that they took part in drafting them.  Neither the WMP nor the ESU Framework are statements about Plaintiffs; they are

---

[62] *See Melton v. City of Oklahoma City*, 928 F.2d 920, 926–27 (10th Cir. 1991) (explaining that claim for relief is created "[w]hen a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities").

[63] *See Crowley v. City of Burlingame*, 352 F. Supp. 2d 1176 (D. Kan. 2005) (quoting *Burk v. Unified Sch. Dist. No. 329*, 646 F. Supp. 1557, 1565 (D. Kan. 1986)), *aff'd*, 165 F. App'x 579 (10th Cir. 2006).

[64] *See* Doc. 41 ¶ 75.

[65] *Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294, at *12 (D. Kan. Feb. 13, 2018).

policies.  Thus, Plaintiffs fail to allege sufficient facts in support of the first element of their liberty-interest claim against the KBOR Defendants and Thomas.

Unlike the KBOR Defendants, Plaintiffs allege sufficient facts that Hush, Johnson, and Steven Lovett wrote or helped write Plaintiffs' termination letters, so the Court must consider whether the termination letters are stigmatizing.  The letters do not call into question Plaintiffs' honesty or morality.  Instead, Plaintiffs allege reputational injury because the termination letters imply that they had performance issues.  Defendants are correct that reputational injury alone is insufficient to state a liberty-interest claim.[66]  But the Court finds that Plaintiffs sufficiently allege that the termination letters called into question Plaintiffs' fundamental capacity to perform the job.  The example letter quoted in the SAC states that their terminations were based on certain factors that are not performance-based: low enrollment, cost of operations, and restructuring.  It then states that "[s]econdary considerations may include," the items identified by Plaintiffs as stigmatizing.[67]

Plaintiffs cite *Michaels v. City of McPherson*[68] in support of their contention that "vague and unexplained reasons provided for termination" can rise to the level of a liberty interest violation.[69]  In *Michaels*, the plaintiff was a police officer who was terminated, and the statement at issue on the liberty interest claim was a report written by the Chief of Police about the termination.[70]  The report stated, without explanation, that the police officer was terminated because he "engaged in 'conduct unbecoming an officer' and 'numerous other circumstances

---

[66] *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1235 (10th Cir. 1998)

[67] Doc. 41 ¶ 75.

[68] 71 F. Supp. 3d 1257 (D. Kan. 2014).

[69] Doc. 49 at 20.

[70] *Michaels*, 71 F. Supp. 3d at 1260.

where he was no longer viable to be a police officer.'"[71]  The court determined that such an unexplained allegation implies immoral, dishonest, or unseemly behavior and that the "other circumstances" language "cast a shadow on plaintiff's professional reputation" given its vagueness.[72]  Similarly, the "secondary considerations" language in the termination letters here suggest that "performance evaluations," "teaching and research productivity" and "low service productivity" played a role in ESU's decision to terminate Plaintiffs.[73]  These statements support the stigmatizing-statement element of Plaintiffs' stigma-plus claims against Defendants Hush, Johnson, and Lovett.

## 2.    Third Element—Statement Forecloses Other Employment Opportunities

Next, Defendants argue that there are no facts alleged in the SAC that the termination letters foreclosed other employment opportunities.  Plaintiffs need not demonstrate a loss of all employment opportunities, but they must allege more than damage to "prospective employment opportunities."[74]  For example, in *Watson v. University of Utah Medical Center*, the plaintiff could not secure employment in her chosen field as a labor and delivery nurse, although she was able to secure employment as a nurse in a different field.[75]  The Tenth Circuit held that the plaintiff had sufficiently made a showing that her employer's actions "foreclosed her future employment opportunities in her chosen field as a labor and delivery nurse," despite the fact that she still had employment opportunities in the nursing field.[76]

---

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *See, e.g.*, *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989).

[75] 75 F.3d 569, 579 (10th Cir. 1996).

[76] *Id.*; *see also Robinson v. Wichita State Univ.*, No. 16-2138-DDC-GLR, 2018 WL 836294, at *7–8 (D. Kan. Feb. 13, 2018) (finding that to survive motion for judgment on the pleadings, plaintiff's complaint only needs to allege that he cannot find work in his chosen field) (citing *Watson*, 75 F.3d at 579–80); *Salazar v. City of*

The SAC alleges that seven Plaintiffs were placed on administrative leave by ESU while ESU appealed their reinstatements by OAH, and they have been unable to continue their work in their chosen jobs or maintain their tenure status as a result.  All Plaintiffs were required to pack up and remove their personal materials from their offices, were restricted from receiving merit pay increases, and restricted their access to their research and other scholarly projects.  Even after these seven Plaintiffs were reinstated by the OAH hearings judges, ESU placed them on leave without pay and benefits, pending the outcome of the state courts' review.  ESU's restrictions denied the reinstated Plaintiffs the ability to complete the requirements necessary to maintain tenure, which is imperative for them to find future employment in their chosen fields. The SAC also alleges that the Plaintiffs whose terminations were affirmed—McCoy, Lidzy, Koerner, and Christopher Lovett—have been unable to find employment in their chosen fields. The Court finds that these factual allegations are sufficient to support the third element of the liberty interest claims.

### 3.    Fourth Element—Publication

Finally, Defendants challenge the fourth element, that the statements were published. According to Defendants, the termination letters do not constitute public statements because they were letters addressed to each individual Plaintiff with a "cc" to their personnel files.[77]  Plaintiffs first argue that the termination letters were presented by Hush and approved by the KBOR in a public open meeting as evidenced by the KBOR meeting minutes.  Next, Plaintiffs argue that the

---

*Albuquerque*, 776 F. Supp. 2d 1217, 1241 (D.N.M. 2011) (holding that a complaint sufficiently pleaded a deprivation-of-liberty claim when it alleged that plaintiff had been hired as a garbage truck driver instead of as a bus driver, which was plaintiff's chosen field).

[77] *See, e.g.*, Doc. 41-9 (Behrens termination letter).

media widely reported on their terminations. And finally, Plaintiffs argue that the letters are in the public record as part of the OAH proceedings.

The Court has already determined that the WMP and ESU Framework are not statements about these Plaintiffs and cannot form the basis of their liberty interest claims. Only the termination letters themselves constitute statements about Plaintiffs, and there are no allegations in the SAC that they were published during any KBOR open meetings. The SAC does allege, however, that the letters were otherwise published. Documents in ESU's personnel files, such as these, "may be deemed published if there is a likelihood that the information will be disclosed to prospective employers."[78] Defendants argue that under Kansas law, personnel files are not subject to public disclosure under the Kansas Open Records Act.[79] But that is not the standard. The standard is whether there is a likelihood that the termination letters would be disclosed to prospective employers. At this stage, assuming as true the facts alleged in the SAC, the Court presumes that the termination letters would be provided to a prospective employer.[80]

In sum, Defendants' motion to dismiss the liberty-interest claims in Counts VI and V against the KBOR Defendants is granted because the facts as alleged do not support that they made any statements about Plaintiffs. Similarly, there are no allegations that Thomas made a statement about Plaintiffs. Defendants' motion to dismiss the liberty-interest claims against Hush, Johnson, and Steven Lovett is denied.

---

[78] *See Sanchez v. Dubois*, 291 F. App'x 187, 191 (10th Cir. 2008).

[79] *See.* K.S.A. § 45-221(a)(4).

[80] *See Sanchez*, 291 F. App'x at 192 (finding undisputed evidence in summary judgment record on publication element where affidavit established that the document at issue was confidential and would not be provided to potential employers); *see also Michaels v. City of McPherson*, 71 F. Supp. 3d 1257 (D. Kan. 2014) (applying *Sanchez*).

### C.    Conspiracy Claims

Defendants move to dismiss Plaintiffs' conspiracy claims on several grounds: (1) lack of specificity; (2) failure to allege racial animus as required by § 1985; (3) the intracorporate-conspiracy doctrine; and (4) lack of an underlying constitutional violation.  The Court has already considered Plaintiffs' specificity arguments above, finding that the SAC sufficiently addresses each Defendant.  And the Court has already granted the motion to dismiss both the direct liability and conspiracy counts based on a liberty-interest violation as to the KBOR Defendants and Thomas, and otherwise denied the motion to dismiss the liberty-interest claims.  Thus, the Court considers below Defendants' remaining grounds for dismissal.

### 1.    Failure to Allege Racial or Class-Based Animus on § 1985 Claims

Plaintiffs allege conspiracy claims under 42 U.S.C. § 1985 in Counts V, VII, and IX.  In their response, Plaintiffs contend that their claims arise under § 1985(2) and (3).  Under § 1985(2), a plaintiff will have a cause of action where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."[81]  Under § 1985(3), a cause of action lies where "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."[82]  The law is clear that "*both* causes of action require a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"[83]

---

[81] 42 U.S.C. § 1985(2).

[82] *Id.* § 1985(3).

[83] *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (emphasis added) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Defendants move to dismiss because Plaintiffs fail to allege a racial or class-based animus behind the conspirators' actions in this case. Plaintiffs acknowledge that there is no racial animus alleged in the SAC. Instead, they ask the Court to recognize they are members of a protected class of tenured professors who are "problematic leaders at ESU," and union sympathizers. As Plaintiffs acknowledge, there is no authority in this Circuit or elsewhere that tenured professors who are union sympathizers constitute a protected class under § 1985. In fact, neither union sympathizers nor members of political groups nor teachers are considered members of a protected class under § 1985.[84] Because Plaintiffs fail to allege racial or class-based discriminatory animus as required to state a plausible claim under 42 U.S.C. § 1985(2) or (3), Counts V, VII, and IX must be dismissed.

## 2.    Intracorporate-Conspiracy Doctrine

Defendants next move to dismiss all of Plaintiffs' conspiracy claims under the intracorporate-conspiracy doctrine. The Court therefore considers whether this doctrine bars Plaintiffs' remaining conspiracy claims in Counts III and X under § 1983. Under this doctrine, first developed in the antitrust context, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."[85] The Tenth Circuit has declined to apply the doctrine to civil rights actions.[86] Defendants

---

[84] *United Brotherhood of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 838–39 (1983) (union activity); *Brown v. Reardon*, 770 F.2d 896, 905–06 (10th Cir. 1985) (political beliefs); *Pitts v. Bd. of Educ. of U.S.D. 305*, 869 F.2d 555, 557 (10th Cir. 1989) (teachers); *see also Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1176 (10th Cir. 1983) ("[F]rom *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court."). Plaintiffs are incorrect that *Tonkavich v. Kan. Bd. of Regents* holds that tenured professors are considered a protected class for purposes of § 1985. The plaintiff in that case did not include a claim under § 1985. 159 F.3d 504, 509–10 (10th Cir. 1998) (listing the plaintiff's claims, which were all based on 42 U.S.C. § 1983).

[85] *Ziglar v. Abbasi*, 582 U.S. 120, 152–53 (2017).

[86] *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126–27 (10th Cir. 1994); *see also Frasier v. Evans*, 992 F.3d 1003, 1027 n.8 (10th Cir. 2021) (explaining there was no need to revisit its earlier holding, but describing the

acknowledge this precedent but suggest that the Tenth Circuit would revisit this holding if presented with the opportunity.  The Court must apply the law of this Circuit as it exists, and therefore declines to apply the intracorporate-conspiracy doctrine to Plaintiffs' remaining conspiracy claims under § 1983.[87]

### D.    Qualified Immunity

Defendants invoke qualified immunity on the basis that Plaintiffs fail to identify the specific actions taken by particular defendants.  Defendants also argue that Plaintiffs cannot demonstrate the violation of a clearly established property right that would give rise to the claims alleged in Counts I, II, and III.  Once qualified immunity is invoked, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'"[88]  At the motion-to-dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for [constitutionality]."[89]

### 1.    Specificity

Defendants argue first that Plaintiffs fail to identify the specific actions taken by each Defendant in the SAC.  The Court has already considered above whether Plaintiffs sufficiently

---

defendants' argument that there was uncertainty in the law about whether the intracorporate-conspiracy doctrine applied to civil rights claims, "[d]espite our holding to the contrary in *Brever.*").

[87] The Court also disagrees with Defendants' suggestion that the circuit split surrounding application of the intracorporate-conspiracy doctrine to civil rights actions makes Plaintiffs' conspiracy claims not clearly established for purposes of qualified immunity.  As stated above, it is clearly established in the Tenth Circuit that the doctrine does not apply to civil rights actions such as this one.  *See Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020)) (explaining that on the clearly established prong of the qualified immunity analysis, the plaintiff must generally "point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains").

[88] *Johnson v. City of Cheyenne*, 99 F.4th 1206, 1217 (10th Cir. 2024) (emphasis in original) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).

[89] *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309, (1996)).

alleged how each Defendants' conduct violated their rights. As explained, the Court finds that the SAC sufficiently alleges who is alleged to have done what to whom. The Court does not find that the collective use of "Defendants" is problematic when describing the KBOR's collective conduct, and finds that the factual allegations are sufficient to put Defendants on notice of the unconstitutional conduct alleged by Plaintiffs against each Defendant.

### 2.    Property-Right Claims

Next, Defendants argue that they enjoy qualified immunity from suit on Counts I, II, and III, which are Plaintiffs' property-right claims. The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."[90] Plaintiffs here allege both procedural and substantive due process violations. To succeed on their procedural due process claim alleged in Count I, Plaintiffs must prove two elements: first, that they had a constitutionally protected liberty or property interest such that the due process protections were applicable, and second, that they were not "afforded an appropriate level of process."[91]

Substantive due process "provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective."[92] There are two ways in which a plaintiff may establish their substantive due process claim alleged in Count II. First, Plaintiff may demonstrate that Defendant violated a "fundamental right or liberty

---

[90] U.S. Const. amend. XIV, § 1.

[91] *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

[92] *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

interest."[93]  Second, Plaintiff may show that the government's conduct "shocks the judicial conscience."[94]

Plaintiffs contend that both types of due process violations, as well as the § 1983 conspiracy claim in Count III, are premised on their constitutionally protected property interest in continued employment as tenured professors, which they claim is a clearly established right. "An individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'"[95]  In the employment context, an employee "must have 'a legitimate expectation in continued employment.'"[96]

Plaintiffs cite the Tenth Circuit's decision in *Tonkavich v. Kansas Board of Regents* in support of the property right.[97]  Defendants argue that Plaintiffs did not have a property right in continued employment under Kansas law under the amendments to the KBOR WMP and ESU's Framework, and that *Tonkavich* does not apply given the amended policy.  While Defendants are correct that property rights are generally defined by state law, federal law "determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."[98]  "State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts."[99]  Under Kansas law, "an employee terminable at

---

[93] *Id.*

[94] *Id.*

[95] *Teigen v. Renfrow*, 511 F.3d 1072, 1078–79 (10th Cir. 2007) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

[96] *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 574 (10th Cir. 2014) (quoting *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008)).

[97] 159 F.3d 504 (10th Cir. 1998).

[98] *Roth*, 408 U.S. at 577; *Teigen*, 511 F.3d at 1079.

[99] *Schulz v. City of Longmont*, 465 F.3d 433, 444 (10th Cir. 2006) (citing *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001)).

the will of his or her employer does not possess a protected property interest in continued

employment."[100]  But, "an employee terminable only for cause or fault does possess a protected

property interest."[101]

Plaintiffs sufficiently allege that they were entitled to continued employment as defined

by Kansas law.  The entire premise of Plaintiffs' case is that under longstanding KBOR policy,

as tenured faculty, they were terminable only for cause.  They allege that this was the policy in

place when they were hired and obtained tenure, and there is no dispute that this was ESU's

policy before the WMP and ESU Framework changed the policy.  Thus, Plaintiffs do identify a

state-law source of their property interest in continued employment.  Defendants argue that even

under the old policy, there was an exception based on financial exigency.  But Plaintiffs allege in

the SAC that ESU did not qualify for that financial exigency provision because ESU was fully

funded during the academic year for which Plaintiffs received termination notices.[102]  They

allege that overall enrollment had in fact increased, operating revenues had increased, and

operating expenditures had gone down.  Hush received a raise that year, and several faculty

members received bonuses.  Plaintiffs sufficiently allege that they held property rights in their

continued employment.

The next question is whether, under federal law, Plaintiffs' property interest rises to the

level of a claim protected by the Due Process Clause.  The Court agrees with Plaintiffs that it is

clearly established under Tenth Circuit law that tenured university faculty "ha[ve] a property

interest deserving of the procedural and substantive protections of the Fourteenth

---

[100] *Randolph v. Bd. of Pub. Util. of Kan. City, Kan.*, <u>983 F. Supp. 1008, 1015</u> (D. Kan. 1997) .

[101] *Id.*

[102] The Court also notes that ESU's Framework states that "[w]hile the University is *not* facing financial exigency, the financial and market situations do require a prudent review and restructuring."  <u>Doc. 41-12 at 1</u>.

Amendment."[103]  Therefore, the Court denies Defendants' motion to dismiss Counts I, II, and III on the basis of qualified immunity.

### D.    Alternative Grounds for Dismissal

Defendants move for dismissal in the alternative on two other grounds.  First, they seek dismissal of Koerner, Lidzy, Christopher Lovett, and McCoy's First Amendment retaliation claim on the basis of issue preclusion, based on the OAH's administration decisions upholding ESU's termination decisions.  Second, they argue that the Court should abstain from deciding the other seven Plaintiffs' claims since those administrative decisions are pending appeal in state court.  For the reasons discussed below, the Court denies Defendants' motion to dismiss on these alternative grounds.

### 1.    Issue Preclusion

Defendants first argue that issue preclusion bars relitigation of whether Koerner, Lidzy, Christopher Lovett, and McCoy's terminations were the result of unlawful bias or discrimination because the OAH concluded that these employees failed to meet their burden of proving that their terminations were the result of "bias."  The parties dispute whether federal or state law applies to issue preclusion in this case.  Because Defendants ask the Court to preclude relitigation of an issue they claim was fully litigated in a Kansas administrative proceeding, they raise a full faith and credit issue.[104]  Therefore, the Court "must [first] ascertain what preclusive effect [the state] would give its own decision before we may know what effect it should be given

---

[103] *Brenna v. S. Colo. State Coll.*, 589 F.2d 475, 476 (10th Cir. 1978); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998).

[104] *See* 28 U.S.C. § 1738 (providing that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken"); *Reed v. McKune*, 298 F.3d 946, 949 (10th Cir. 2002) (applying Kansas law of issue preclusion to determine whether state court proceeding has preclusive effect in 42 U.S.C. § 1983 case in federal court).

in the federal court.'"[105]  Next, the Court must determine whether Plaintiffs had a full and fair opportunity to litigate their claims in the state court proceeding.[106]

Under Kansas law, issue preclusion requires: "(1) a prior judgment on the merits that determined the parties' rights and liabilities on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the same parties or parties in privity; and (3) the issue litigated must have been determined and necessary to support the judgment."[107]  Collateral estoppel applies to administrative decisions when the agency acts "in a judicial capacity."[108]

Defendants have not demonstrated that the OAH litigated the same issue that is before the Court on Plaintiffs' First Amendment claims.  Defendants assert that the OAH concluded that these Plaintiffs' terminations were not the result of "bias," which is at issue on Plaintiffs' First Amendment claims.  The Court disagrees.

Two of the four administrative decisions explicitly declined to decide the issue of bias.  The Lovett and Lidzy decisions both state that "the nature of the process afforded through the ESU Framework is not adequate to provide the evidence necessary to establish or disprove his allegation of bias.  Whether the assertion of bias is factual cannot be determined here."[109]  The only issue of bias or discrimination addressed by the decision on Koerner's appeal is her claim that she was terminated due to her age or gender; there was no discussion of her speech.[110]  And

---

[105] *Pohl v. U.S. Bank for Merrill Lynch First Franklin Mortg. Loan Tr. Back Certificates Series 2007-4*, 859 F.3d 1226, 1229 (10th Cir. 2017) (quoting *Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir. 1996)).

[106] *Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1134 (D. Kan. 2018) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997), *aff'd*, 768 F. App'x 847 (10th Cir. 2019).

[107] *In re Application of Fleet for Relief from a Tax Grievance in Shawnee Cnty.*, 272 P.3d 583, 589–90 (Kan. 2012).

[108] *Id.* (quoting *Winston v. State Dep't of Social & Rehab. Servs.*, 49 P.3d 1274, 1285 (Kan. 2002)).

[109] Doc. 45-7 at 4; Doc. 45-6 at 5..

[110] Doc. 45-5 at 8.

while McCoy apparently did make the argument before the OAH that his termination was in retaliation for opinions expressed in his published writings, the ALJ stated that "McCoy has not presented sufficient evidence to establish, by the preponderance of the evidence, that his termination was due to unlawful bias or discrimination," because there was instead information presented that his termination was based on program changes.[111] All four of the decisions state that the administrative tribunal lacks authority to decide constitutional issues, and that their decisions therefore do not address such claims. In sum, Defendants fail to demonstrate that the issue of bias based on these Plaintiffs' speech was an issue that was actually litigated and determined by the OAH judges in these four appeals.

Moreover, Defendants fail to state any law for the proposition that these Plaintiffs' claims of "bias" in the administrative appeals implicate an issue that must be decided on their First Amendment retaliation claims in this case. To demonstrate First Amendment retaliation, Plaintiffs must show:

> (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.[112]

The OAH did not decide any of these issues with respect to Koerner, Lidzy, Lovett, or McCoy. Because the same issues are not before this Court that the OAH decided with respect to these four Plaintiffs, the Court need not consider the other issue preclusion elements.

The Court denies Defendants' motion to dismiss Koerner, Lidzy, Lovett, and McCoy's First Amendment retaliation claims under the doctrine of collateral estoppel.

---

[111] Doc. 45-8 at 8–9.

[112] *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007).

###### 2.    Abstention

Next, Defendants ask the Court to abstain from deciding claims by the seven Plaintiffs whose OAH reversals ESU has appealed under either *Railroad Commission v. Pullman Co.*[113] or *Colorado River Water Conservation District v. United States*.[114]  The Court addresses each abstention doctrine in turn.

###### a.    *Pullman*

The *Pullman* abstention doctrine applies "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."[115]  It "is limited to uncertain questions of state law."[116]  The Court is mindful that *Pullman* abstention "is a 'narrow exception' to the federal courts' general duty to decide cases and 'is used only in exceptional circumstances.'"[117]

Defendants argue that this Court should allow the state courts to decide the "metes and bounds" of Plaintiffs' property right in continued employment under the WMP and ESU Framework before proceeding to consider Plaintiffs' constitutional challenges based on that property right.  But Defendants fail to specify the unsettled question of law that must be decided by the state courts before this Court can proceed to decide Plaintiffs constitutional claims.  Plaintiffs' appeals to the OAH presented the following question: whether ESU's termination decisions complied with governing state laws and policies; specifically, the ESU Framework.  The reversals were largely based on ESU's failure to specify the reasons for each professor's

---

[113] 312 U.S. 496 (1941).

[114] 424 U.S. 800 (1976).

[115] *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).

[116] *Id.*

[117] *Caldara v. City of Boulder*, 955 F.3d 1175, 1178 (10th Cir. 2020) (quoting *Kan. Jud. Rev. v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008)).

termination in the termination letters.  ESU appeals on the basis that the ALJ lacked jurisdiction to consider whether ESU's termination notice was sufficient, and that the OAH decisions were not based on substantial evidence.  ESU's appeals state:

> While a terminated employee may have the right to bring other allegations or claims before other tribunals, such as a claim of inadequate due process, the KBOR policy . . . does not grant any jurisdictional authority to Respondent OAH  . . . to analyze, evaluate, or rule upon the adequacy or validity of anything other than Petitioner's decision to terminate an employee.[118]

It is not at all clear from Defendants' appeal documents that the state court will resolve "the metes and bounds" of Plaintiffs' property rights in their continued employment.  Instead, those appeals will decide whether the OAH was within its jurisdictional authority to review the termination notices, and whether the decisions were supported by substantial evidence.  Those issues need not be resolved before this Court can determine whether Plaintiffs hold a property right to continued employment under state law.  Therefore, the *Pullman* abstention doctrine does not apply here.

### b.    *Colorado River*

Plaintiffs next argue that abstention is appropriate under the *Colorado River* doctrine, which establishes certain factors for a district court to consider when deciding whether to dismiss or stay a federal suit that parallels a state court proceeding.[119]  To determine whether a stay under *Colorado River* is warranted, the Court must first determine whether the two actions are parallel, before turning to the six *Colorado River* factors.[120]

---

[118] *See, e.g.*, Doc. 45-1 at 14.

[119] *See Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999).

[120] *See Allen v. Bd. of Educ., Unified Sch. Dist. No. 435*, 68 F.3d 401, 402 (10th Cir. 1995).

Lawsuits are considered parallel "if substantially the same parties litigate substantially the same issues in different forums."[121]  In determining whether state and federal proceedings are parallel, the Tenth Circuit has instructed district courts "to examine the state proceedings as they actually exist," as opposed to examining how the state proceedings "could have been brought in theory."[122]  The Tenth Circuit prefers this approach because in order to stay a case based on the *Colorado River* doctrine, the state court litigation must be an "adequate vehicle for the complete and prompt resolution of the issue between the parties."[123]

ESU's state court appeals are not parallel to this lawsuit.  First, they are not between substantially the same parties.  ESU, in its official capacity, is pursuing the state court appeals.  Neither the individual ESU officials, nor the KBOR, nor any KBOR official is a party to that action.  Second, the state court appeals would not dispose of all the issues in this case.  There are no constitutional claims at issue in the state court appeals, nor do those cases address Plaintiffs' injuries beyond their terminations—being put on leave and asked to leave their workspaces and stop all research necessary to maintain their tenure.  Plaintiffs' OAH appeals, which ESU is in turn appealing, all consider whether Plaintiffs' terminations complied with the ESU Framework.  Plaintiffs' claims in this case also ask this Court to determine whether the termination decisions and ESU's treatment of Plaintiffs after those decisions, deprived Plaintiffs of their constitutional rights.  As described in the Court's qualified immunity discussion, the property rights at issue are certainly defined by state law.  But Defendants fail to demonstrate that the state courts are an adequate vehicle for the complete resolution of the issues presented by this case.  The state court

---

[121] *Allen*, <u>68 F.3d at 402</u> (quoting *Fox v. Maulding*, <u>16 F.3d 1079, 1081</u> (10th Cir. 1994)).

[122] *Fox*, <u>16 F.3d at 1080</u>.

[123] *Id*. (quoting *Moses H. Core Mem'l Hosp. v. Mercury Constr. Corp.*, <u>460 U.S. 1, 28</u> (1983)).

appeals are not parallel to this action; thus, the Court need not consider whether the Colorado River factors are present.  Defendants' motion to abstain under *Colorado River* is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 45) is **granted in part and denied in part**.  Defendants' motion is granted as to Counts V, VII, and IX.  Defendants' motion to dismiss Defendants Thomas, Miller, Harrison-Lee, Kiblinger, Ice, Lane, Winter, Feuerborn, Bangerter, Hutton, Rolph, Schmidt, Brandau, Van Etten, Benson, Mendoza, and Dicus on Count IV is also granted.  Defendants' motion to dismiss is otherwise denied.

**IT IS SO ORDERED.**

Dated: December 5, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMANDA MIRACLE, et al.,

     Plaintiffs,

     v.

KEN HUSH, et al.,

     Defendants.

Case No. 23-4056-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiffs Michael Behrens, Rob Catlett, Dan Colson, Charles Emmer, Brenda Koerner, Sheryl Lidzy, Christopher Lovett, Max McCoy, Amanda Miracle, Michael Morales, and Lynnette Sievert were all tenured professors at Emporia State University ("ESU") when they were notified on September 15, 2022, that their employment would terminate the following May. They brought this civil rights action under 42 U.S.C. §§ 1983 and 1985 for violations of their procedural and substantive due process rights under the Fifth and Fourteenth Amendments, their equal protection rights under the Fourteenth Amendment, and their First Amendment rights. They named as Defendants Shane Bangerter, Blake Benson, Ann Brandau, John Dicus, Bill Feuerborn, Cheryl Harrison-Lee, Ken Hush, Mark Hutton, Carl Ice, Kevin Johnson, Shellaine Kiblinger, Cynthia Lane, Steven Lovett, Diana Mendoza, Julene Miller, Jon Rolph, Allen Schmidt, Brent Thomas, Helen Van Etten and Wint Winter, who were either ESU officials or on the Kansas Board of Regents ("KBOR") at the time Plaintiffs were terminated.

On December 5, 2024, the Court granted in part and denied in part Defendants' Motion to Dismiss the Second Amended Complaint ("SAC").[1]  The Court dismissed Counts V, VII, and

---

[1] Doc. 54.

IX—the conspiracy claims under 42 U.S.C. § 1985.  The Court also granted Defendants' motion to dismiss  the liberty-interest claim against Defendants Thomas, Miller, Harrison-Lee, Kiblinger, Ice, Lane, Winter, Feuerborn, Bangerter, Hutton, Rolph, Schmidt, Brandau, Van Etten, Benson, Mendoza, and Dicus.  The Court otherwise denied Defendants' motion to dismiss.

Now before the Court is Defendants' Motion to Reconsider (Doc. 55).  The motion is fully briefed and the Court is prepared to rule.  For the reasons set forth below, the Court grants Defendants' motion to reconsider to the limited extent it seeks clarification about the property-interest ruling, and to the limited extent it seeks to correct a statement about Plaintiffs' administrative leave, but the Court declines to alter or amend its previous rulings on these issues.

## I.    Standard

Defendants move to reconsider under D. Kan. Rule 7.3:

> Except for motions under Fed. R. Civ. P. 59(e) or 60, parties seeking reconsideration of a court order must file a motion within 14 days after the order is served unless the court extends the time. A motion to reconsider must be based on:
> (1) an intervening change in controlling law;
> (2) the availability of new evidence; or
> (3) the need to correct clear error or prevent manifest injustice.

A motion to reconsider should not be used as "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed."[2]  And "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[3]

---

[2] *Ward v. Wesley Med. Ctr., LLC*, No. 23-1091-HLT-BGS, 2024 WL 989880, at *2 (D. Kan. Mar. 7, 2024) (quoting *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994), *aff'd*, 43 F.3d 1484 (10th Cir. 1994)).

[3] *Id.* (quoting *Paliwoda v. Showman*, No. 12-2740-KGS, 2014 WL 11517806, at *1 (D. Kan. Sept. 30, 2014)).

The Court also notes that under <u>Fed. R. Civ. P. 54(b)</u>, "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims."  When considering an "interlocutory" motion under Rule 54(b), "'the district court is not bound by the strict standards for altering or amending a judgment encompassed in <u>Federal Rules of Civil Procedure 59(e)</u> and 60(b),' which govern a district court's reconsideration of its final judgments."[4]  Such a motion is left to the court's discretion.[5]

## II.  Discussion

Defendants move to reconsider based on the following points of error: (1) that the Court misapplied Tenth Circuit precedent in considering Plaintiffs' property-interest claims;[6] and (2) that the Court misapprehended the SAC by stating in its analysis of the liberty-interest claims that seven of the reinstated Plaintiffs were on administrative leave without pay and benefits, when in fact the SAC alleges they were placed on administrative leave with pay and benefits. The Court addresses each in turn.

### A.  Property-Interest Analysis

Defendants invoked qualified immunity on Counts I, II, and III, which are all based on Plaintiffs' assertion of a property right to continued employment under the Fourteenth Amendment, and argued that Plaintiffs failed to allege a protected property interest in continuing

---

[4] *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, <u>887 F.3d 1003, 1024</u> (10th Cir. 2018), *as revised* (Apr. 13, 2018) (quoting *Fye v. Okla. Corp. Comm'n*, <u>516 F.3d 1217, 1223</u> n.2 (10th Cir. 2008)).

[5] *Id.*

[6] In its opening brief, Defendants include a bare request for the Court to "reconsider its *Pullman* abstention analysis in light of" what they call a "controlling issue" of state property law on the property-interest claim. <u>Doc. 55 at 3</u>. For the foregoing reasons, the Court denies Defendants' motion to reconsider its property-interest ruling, and it therefore declines Defendants' open-ended invitation to revisit its *Pullman* abstention analysis based on this single sentence in the motion.  The Court stands by its analysis in its December 5 Order.

employment as a matter of law.  As the Court noted in its December 5 Order, "[a]n individual has a property interest in a benefit for purposes of due process protection only if he has a 'legitimate claim of entitlement' to the benefit, as opposed to a mere 'abstract need or desire' or 'unilateral expectation.'"[7]  In the employment context, an employee "must have 'a legitimate expectation in continued employment.'"[8]

The key United States Supreme Court case on this issue is *Board of Regents of State Colleges v. Roth*, where the Court explained:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms.
>
> . . .  [I]n the area of public employment, the Court has held that a public college professor dismissed from an office held under tenure provisions, and college professors and staff members dismissed during the terms of their contracts, have interests in continued employment that are safeguarded by due process.
>
> . . . .
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[9]

In its December 5 Order, the Court reiterated this guidance from *Roth*, which has been applied countless times by the Tenth Circuit, including in *Teigen v. Renfrow*.[10]  The Court then

---

[7] *Teigen v. Renfrow*, 511 F.3d 1072, 1078–79 (10th Cir. 2007) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

[8] *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 574 (10th Cir. 2014) (quoting *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008)).

[9] 408 U.S. at 576–77 (first citing *Slochower v. Bd. of Educ.*, 350 U.S. 551 (1956); and then citing *Wieman v. Updegraff*, 344 U.S. 183 (1952)).

[10] 511 F.3d 1072 (10th Cir. 2007).

considered the state-law rules in Kansas that Plaintiffs allege support their claims of entitlement to continued employment—that they are tenured professors with a legitimate expectation of continued employment—and determined that Plaintiff stated a claim for relief on this basis.

Defendants first argue in their motion to reconsider that this Court misapplied the law by defining Plaintiffs' property interest on the basis of federal instead of state law. Defendants misread the Court's Order. It clearly addressed the state-law basis for Plaintiffs' property-right claims and Defendants' assertion that the temporary KBOR and ESU rule changes removed any expectation these Plaintiffs could have had in continued employment. The Court determined that "Plaintiffs sufficiently allege[d] that they were entitled to continued employment *as defined by Kansas law*. The entire premise of Plaintiffs' case is that under longstanding KBOR policy, as tenured faculty, they were terminable only for cause."[11] Plaintiffs alleged in the SAC a protected property interest in continued employment based on the prior version of the temporary KBOR rule amendment and ESU Framework (i.e., state law), which this Court then found was clearly established for purposes of qualified immunity under cases such as *Tonkovich v. Kan. Bd. of Regents* (a question of federal law).[12]

Defendants next argue that the Court did not sufficiently address their argument and authority in the original briefing that the State can and did eliminate Plaintiff's property interest

---

[11] Doc. 54 at 29 (emphasis added).

[12] 159 F.3d 504 (1998). Defendants baldly assert in their initial briefing that the Tenth Circuit in *Tonkavich* also failed to identify state law when it stated that the plaintiff had a protectible property interest in continued employment because he was a tenured professor. Doc. 45 at 13–14. To the extent Defendants require written clarification about whether the Court agrees with this position, it does not. As stated in *Roth* and several other Tenth Circuit cases decided since *Tonkavich*, tenure generally confers upon a public employee a reasonable expectation of continued employment. *See, e.g.*, *McDonald v. Wise*, 769 F.3d 1202, 1210–11 (10th Cir. 2014); *Hulen v. Yates*, 322 F.3d 1229, 1240–41 (10th Cir. 2003); *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007); *Maranville v. Utah Valley Univ.*, 568 F. App'x 571, 575 (10th Cir. 2014); *Shively v. Utah Valley Univ.*, No. 20-4088, 2022 WL 1021614, at *2 (10th Cir. Apr. 6, 2022). Notably, the Tenth Circuit has not abrogated or criticized this holding in *Tonkavich*, and Defendants do not point to any authority that supports their suggestion that *Tonkavich* failed to apply the correct law. The Court did not commit clear error in applying this binding Tenth Circuit law, and, as stated above, the Court has considered Plaintiffs' property interest as defined by state and not federal law.

in continued employment under the facts alleged in the SAC.  Defendants urge that the Court

ignored two Supreme Court decisions it cited for the general rule that legislative due process

provides all the process that is due when it results in the deprivation of a property interest.[13]

Indeed, the Tenth Circuit has explained that in *Bi-Metallic*, the Supreme Court

> distinguished the Court's earlier decision in *Londoner v. City and
> Cty. of Denver*, which held that constitutional due process required
> a hearing, because in the earlier case the "board had to determine
> whether, in what amount, and upon whom a tax for paving a street
> should be levied . . . [and a] relatively small number of persons
> was concerned, who were exceptionally affected, in each case
> upon individual grounds."  In such circumstances the need for
> additional procedural protections is greater because political
> remedies are often unattainable by individuals or small groups, and
> the grant of procedural safeguards to a few does not impose as
> great a burden on government.[14]

Defendants also criticize the Court for failing to acknowledge the Kansas Supreme

Court's decision in *Scribner v. Board of Education*, which held that there was no due process

violation when the Kansas Legislature amended the Kansas Teacher Due Process Act

("KTDPA") to eliminate its longstanding tenure provisions for teachers who met its years of

service requirement.[15]  The *Scribner* court determined that under United States Supreme Court

authority dating back to *Bi-Metallic*, the legislature could remove public school teachers' right to

tenure through the legislative process, which "generally provides all the process that is due when

legislation results in the complete or partial deprivation of protected property interests of more

than a few individuals."[16]  The court rejected the plaintiffs' challenge to the statutory

---

[13] *See Bi-Metallic Inv. Co. v. State Bd. of Educ.*, 455 U.S. 422, 433 (1915); *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283–85 (1984).

[14] *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1046 (10th Cir. 2016) (alteration in original) (quoting *Bi-Metallic*, 239 U.S. at 446) (citations omitted).

[15] 419 P.3d 1149, 1153 (Kan. 2018).

[16] *Id.* at 1155 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982)).

amendment, finding that under *Bi-Metallic*, it was a legislative act that applied to all tenured

teachers in all Kansas school districts.[17]

None of this authority changes this Court's ruling.  Plaintiffs offer persuasive arguments

about why the allegations in the SAC sufficiently demonstrate that the KBOR's amended rule

and ESU's Framework did not eliminate their protected property interest in continued

employment.  First, they argue that the temporary amendments to the KBOR tenure rules as

applied by ESU's Framework were not passed through a legislative process that provided all the

process that was due, as distinguished from *Scribner*.  The Tenth Circuit has discussed when an

action is legislative versus administrative for purposes of *Bi-Metallic*:

> In distinguishing between legislative and administrative action,
> some courts have considered "the nature of the decisionmaking
> body" as elected or appointed; the type of decision (the adoption of
> a "comprehensive plan" or just the grant of a variance); and
> whether the action involves "general policy formulations, which
> are considered legislative, [or] specific applications of previously
> formulated policy, which are considered administrative."  Others
> have focused on (1) the "particularity of the impact of the state
> action," and (2) the factual basis for the action—legislation is
> typically based on "generalizations concerning a policy or state of
> affairs" that "do not usually concern the immediate parties but . . .
> help the tribunal decide questions of law, policy, and discretion,"
> whereas administrative action is typically based on adjudicative
> facts that "relate with greater specificity to individuals or particular
> situations."[18]

There was no question in *Scribner* that the KTDPA amendments were legislative.  In contrast,

there is a question of fact here about whether the rule passed through the legislative process, and

neither party engages in any meaningful analysis about whether the KBOR's policy amendment

and/or ESU's Framework is legislative for purposes of the due process analysis based on the

---

[17] *Id.* at 1156–58.

[18] *Onyx Props.*, 838 F.3d 1039, 1046–47 (quoting Developments in the Law—Zoning, 91 Harv. L. Rev. 1427, 1509 (1978)) (citations omitted).

considerations set forth above by the Tenth Circuit.  This issue was wholly absent from the initial

briefing, and is undeveloped in the briefing on Defendants' motion to reconsider.[19]  Assuming as

true the facts alleged in the SAC, it is plausible that the KBOR's actions were administrative and

not legislative, and therefore falls outside of *Bi-Metallic*.

Second, to the extent the KBOR's rule change is considered "legislative," Plaintiffs

allege that the process under which the amendments were passed was defective because it did not

provide Plaintiffs with sufficient notice.[20]  The Supreme Court has explained that "a legislature

generally provides constitutionally adequate process simply by enacting the statute, publishing it,

and, to the extent the statute regulates private conduct, affording those within the statute's reach

a reasonable opportunity both to familiarize themselves with the general requirements imposed

and to comply with those requirements."[21]  The KBOR's Work Management Plan ("WMP")

allowed KBOR universities to propose a framework that suspended tenure rights.  It was passed

on January 20, 2021, and the SAC alleges that no prior notice of the WMP was given.  The

KBOR approved ESU's Framework during its September 14–15, 2022 meeting, but the SAC

alleges that neither ESU nor the KBOR submitted the WMP or ESU Framework to the Kansas

---

[19] Defendants hang their hat on *Minnesota State Board for Community Colleges v. Knight*, claiming it "applied" the principle announced in *Bi-Metallic* "to executive policymaking, not just purely legislative action." Doc. 57 at 3.  This is an overstatement.  *Knight* did not consider a procedural due process claim.  It considered whether community college instructors had a First Amendment right to be heard by the public bodies that decide community college policy.  465 U.S. 271, 283–84 (1985).  The Court cited *Bi-Metallic* for the proposition that the public generally does not have a right to be heard by public bodies making policy decisions under the Fourteenth Amendment's Due Process clause, and then proceeded to hold that under the First Amendment, the instructors had "no special constitutional right to a voice in the making of policy by their government employer." *Id.* at 284–86. *Knight* does not apply *Bi-Metallic*'s due process holding to the non-legislative context, nor does it even consider the contours of due process rights when the State removes a protected property right.  Moreover, this case says nothing about the notice component of due process, nor what constitutes "legislative action."  Thus, contrary to Defendants' conclusory assertion, this case does not "alone" decide this matter.

[20] *See Rea v. Matteucci*, 121 F.3d 483, 485 (9th Cir. 1997) (citing *Atkins v. Parker*, 472 U.S. 115, 130, (1985)) ("[A]n individual claiming a defect in the legislative process might have a claim for due process violations.").

[21] *United States v. Locke*, 471 U.S. 84, 108 (1985).

Secretary of State for adoption or publication.  Plaintiffs received their termination letters without delay, on September 15, 2022, at the conclusion of the KBOR's meeting adopting ESU's Framework.  Viewing the facts alleged as true, as the Court must, it is plausible that there was a defect in the legislative process when the rules were made.

For the reasons discussed above, the Court finds no clear error in its decision to deny Defendants' Rule 12(b)(6) motion on the sole basis that Plaintiffs lack any property right in continued employment as a matter of law.  This issue came before the Court on Defendants' qualified immunity defense.  As the Tenth Circuit has explained, "[b]ecause they turn on a fact-bound inquiry, 'qualified immunity defenses are typically resolved at the summary judgment stage' rather than on a motion to dismiss," and Defendants are subjected "to a more challenging standard of review than would apply on summary judgment."[22]  The Court disagrees with Defendants' position that the property right question in this case turns on a clear-cut issue of Kansas state law.  There are factual disputes that implicate how Plaintiffs' property rights in continued employment are defined, and what process is due as a result.  The Court therefore did not commit clear error in denying Defendants' motion to dismiss based on qualified immunity, raising the sole issue of whether Plaintiffs had a property right in continued employment. Defendants' conduct as alleged in the SAC sufficiently alleges the existence of a property right.

### B.    Reference to Plaintiffs' Administrative Leave

On page 22 of the Court's December 5 Order, in its analysis of Plaintiffs' liberty-interest claims, the Court mistakenly stated that the seven Plaintiffs who were reinstated after their appeals to the Office of Administrative Hearings ("OAH") were placed on leave *without* pay and

---

[22] *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

benefits by ESU.  Defendants, without further analysis, contend that this mistake "means that these seven Plaintiffs cannot assert a claim for loss of employment opportunities because they are still actively employed (including pay and benefits)."[23]  The Court disagrees.  While Defendants are correct that the SAC alleges these Plaintiffs were placed on administrative leave *with* pay and benefits,[24] this corrected factual allegation does not change the Court's analysis on the liberty interest claims.  The statement was made in the course of the Court's discussion of the third element of Plaintiffs' claim—whether the allegedly stigmatizing statements (the ESU Defendants' termination letters)  foreclosed other employment opportunities.[25]  As the Court explained, while on administrative leave, ESU denied the reinstated Plaintiffs the ability to complete the requirements necessary to maintain tenure, which is imperative for them to find future employment in their chosen fields.  They were also restricted from their campus offices, from ESU electronic tools, from merit pay increases, or access to information about grants.  Thus, Plaintiffs' leave with pay status does not change the Court's determination that the SAC sufficiently alleged facts to support the third element of the liberty-interest claim against the ESU Defendants.

*Paul v. Davis*[26] does not change the result.  There, the Supreme Court explained that under the Fourteenth Amendment, defamation by a state official must have occurred "in the course of the termination of employment" and that a hearing is not required "each time the State in its capacity as employer might be considered responsible for a statement defaming an

---

[23] Doc. 55 at 4.

[24] Doc. 41 ¶ 95.

[25] *See McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (quoting *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)) (listing elements).

[26] 424 U.S. 693 (1976).

employee who continues to be an employee."[27]  But here, termination is exactly the context of the alleged stigmatizing statements—they were made in *termination letters*.  These Plaintiffs were reinstated only after appealing the termination decisions to the OAH.  And ESU in turn appealed the reinstatement decisions to the Lyon County, Kansas District Court under K.S.A. § 77-610, which remain pending.  The fact that the appeals of those decisions are still pending and some of the Plaintiffs are on leave with pay in the interim does not foreclose Plaintiffs' liberty-interest claim.

In conclusion, the Court grants Defendants' motion to reconsider to the limited extent it seeks clarification of the Court's property-interest analysis, and seeks correction of the Court's reference to "leave without pay" on page 22 of its Order.  The Court hereby corrects that reference; it should state "leave with pay."  The motion is otherwise denied and the Court's December 5, 2024 rulings stand.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Reconsider (Doc. 55) is **granted in part** to the limited extent Defendants seek clarification of the Court's property-right ruling, and a correction to the Court's reference to "leave without pay" on page 22 of its December 5 Order.  The motion is otherwise **denied**.

**IT IS SO ORDERED.**

Dated: February 11, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[27] *Id.* at 710.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AMANDA MIRACLE,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-4056-JAR-GEB** |
| | ) | |
| **KEN HUSH,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' NOTICE OF INTERLOCUTORY APPEAL

Defendants Ken Hush, Brent Thomas, Kevin Johnson, Steven Lovett, Julene Miller, Bill Feuerborn, Cheryl Harrison-Lee, Shane Bangerter, Ann Brandau, Mark Hutton, Shellaine Kiblinger, Jon Rolph, Allen Schmidt, Helen Van Etten, Carl Ice, Cynthia Lane, Blake Benson, Diana Mendoza, Wint Winter, and John Dicus ("Defendants") appeal to the United States Court of Appeals for the Tenth Circuit from the orders entered on December 5, 2024 (Doc. 54), and February 11, 2025 (Doc. 58), which denied qualified-immunity defenses raised in their Motion to Dismiss (Doc. 45) and Motion for Reconsideration (Doc. 55), and are therefore immediately appealable under the collateral order doctrine. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992); *Stonecipher v. Valles*, 759 F.3d 1134, 1149 (10th Cir. 2014).

Respectfully submitted,

Kris W. Kobach
Attorney General of Kansas

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of February, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

J. Phillip Gragson
Amanda S. Vogelsberg
John H. Hutton
Kara L. Eisenhut
Henson, Hutton, Mudrick, Gragson
& Vogelsberg, LLP
3649 SW Burlingame Rd., Ste. 200
Topeka, KS 66611-2155
*Attorneys for Plaintiffs*

/s/ Matthew L. Shoger
Matthew L. Shoger
Assistant Attorney General