Case No. 25-3032

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

AMANDA MIRACLE, et al.,
*Plaintiffs-Appellees,*

v.

KEN HUSH, et al.,
*Defendants-Appellants.*

---

## APPELLANTS' REPLY BRIEF

---

Appeal from the United States District Court for the District of Kansas
Honorable Julie A. Robinson, Senior District Court Judge
District Court Case No. 23-CV-4056-JAR-GEB

---

OFFICE OF KANSAS ATTORNEY
GENERAL KRIS W. KOBACH

120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
(785) 296-2215
dwight.carswell@ag.ks.gov
matt.shoger@ag.ks.gov

Dwight R. Carswell
  *Deputy Solicitor General*
Matthew L. Shoger
  *Assistant Attorney General*

*Attorneys for Defendants-Appellants*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.....................................................................................ii

ARGUMENT ........................................................................................................... 1

I.    It is well established that denials of qualified immunity
      are immediately appealable under the collateral order
      doctrine............................................................................................................ 1

II.   Defendants are entitled to qualified immunity on
      Plaintiffs' property interest claims............................................................4

III.  Defendants are entitled to qualified immunity on
      Plaintiffs' other claims because the complaint fails to
      plausibly allege their role in the asserted constitutional
      violations. ..................................................................................................... 15

      A.    KBOR Defendants ............................................................................ 15

      B.    Brent Thomas.................................................................................... 19

      C.    Kevin Johnson and Steven Lovett................................................. 20

CONCLUSION...................................................................................................... 21

CERTIFICATE OF COMPLIANCE.....................................................................23

CERTIFICATE OF SERVICE .............................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011)................................................................3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).....................................................2, 3, 9

*Bi-Metallic Inv. Co. v. State Bd. of Equalization,*
    239 U.S. 441 (1915)......................................7, 10, 11, 12, 14

*Bledsoe v. Carreno,*
    53 F.4th 589 (10th Cir. 2022)...............................................3

*Brown v. Montoya,*
    662 F.3d 1152 (10th Cir. 2011)............................................3

*Cohen v. Beneficial Indust. Loan Corp.,*
    337 U.S. 541 (1949)..............................................................2

*Crider v. Bd. of Cnty. Comm'rs,*
    246 F.3d 1285 (10th Cir. 2001)............................................6

*Dibble v. Quinn,*
    793 F.3d 803 (7th Cir. 2015)..........................................8, 12

*Estate of Lockett v. Fallin,*
    841 F.3d 1098 (10th Cir. 2016)............................................3

*F.C.C. v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993)..............................................................6

*Frasier v. Evans,*
    992 F.3d 1003 (10th Cir. 2021)..........................................18

*Hemba v. Miss. Dep't of Corr.*,
  998 So.2d 1003 (Miss. 2009) ............................................................. 12

*Hovater v. Robinson*,
  1 F.3d 1063 (10th Cir. 1993) ............................................................... 3

*Krotkoff v. Goucher Coll.*,
  585 F.2d 675 (4th Cir. 1978) ............................................................... 4

*LC&S, Inc. v. Warren Cnty. Area Plan Comm'n*,
  244 F.3d 601 (7th Cir. 2001) ............................................................. 13

*McMurtray v. Holladay*,
  11 F.3d 499 (5th Cir. 1993) ........................................................ 11, 13

*Minn. State Bd. for Comm. Colls. v. Knight*,
  465 U.S. 271 (1984) ........................................................................... 14

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ......................................................................... 1, 2

*Nicholas v. Pa. State Univ.*,
  227 F.3d 133 (3d Cir. 2000) ................................................................ 6

*Onyx Props. LLC v. Bd. of Cnty. Comm'rs.*,
  838 F.3d 1039 (10th Cir. 2016) ........................................................ 11

*Pahls v. Thomas*,
  718 F.3d 1210 (10th Cir. 2013) ........................................................ 16

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ........................................................ 16

*Roberts v. Winder*,
  16 F.4th 1367 (10th Cir. 2021) ........................................................... 5

*Scribner v. Bd. of Educ.*,
 419 P.3d 1149 (Kan. 2018)................................ 6, 7, 8, 10, 14

*Shrum v. Cooke*,
 60 F.4th 1304 (10th Cir. 2023) ........................................ 16

*Taylor v. Kan. Dep't of Health and Env't*,
 305 P.3d 729 (Kan. Ct. App. 2013) .................................... 9

*Tonkovich v. Kan. Bd. of Regents*,
 159 F.3d 504 (10th Cir. 1998) .......................................... 19

## Statutes

28 U.S.C. § 1291 ............................................................ 2

Kan. Stat. Ann. § 72-2259 ............................................. 7, 8

Kan. Stat. Ann. § 77-415 (2021) ....................................... 9

# ARGUMENT

Plaintiffs' Response Brief fails to demonstrate that they had a property right in continued employment at the time of their terminations, much less that the existence of this right was clearly established. Defendants are therefore entitled to qualified immunity on the due process claims in Counts I through III of Plaintiffs' complaint, as well as the conspiracy claim in Count X to the extent it is based on alleged due process violations. And Plaintiffs still have not explained how their complaint plausibly alleges the personal participation of any Defendant other than President Hush in the constitutional violations asserted in the remaining claims, so those Defendants are entitled to qualified immunity on those claims as well.

## I.     It is well established that denials of qualified immunity are immediately appealable under the collateral order doctrine.

Plaintiffs begin by questioning this Court's jurisdiction, claiming that the collateral order doctrine does not allow for an interlocutory appeal of a motion to dismiss based on qualified immunity. Appellees' Br. at 18-22. But the Supreme Court settled that long ago, holding in *Mitchell v. Forsyth*, 472 U.S. 511 (1985), that denials of qualified

immunity satisfy the collateral order doctrine. *Id.* at 525-30. *Mitchell* specifically addressed the requirement that the appealed issue must be separate from the merits. The Court noted that because "qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct," "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Id.* at 527-28. Qualified immunity also requires consideration of whether the law was clearly established, which is separate from the merits of a plaintiff's underlying constitutional claim. *Id.* at 528.

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court reaffirmed that "a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of [28 U.S.C.] § 1291." 556 U.S. at 672. The Court explained that, "[a]s a general matter, the collateral-order doctrine may have expanded beyond the limits dictated by its internal logic and the strict application of the criteria set out in *Cohen* [*v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)]. But the applicability of the doctrine in the context of qualified-immunity claims is well established." 556 U.S. at 672. In line with that well-established

precedent, this Court routinely considers interlocutory appeals from orders denying qualified immunity, including at the motion-to-dismiss stage. *See, e.g.*, *Bledsoe v. Carreno*, 53 F.4th 589, 602 (10th Cir. 2022).

Plaintiffs' argument that *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011), and *Estate of Lockett v. Fallin*, 841 F.3d 1098 (10th Cir. 2016), changed the landscape is puzzling. Their argument is based on *Fallin*'s holding that, "[i]n resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." 841 F.3d at 1107 (*quoting Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). But that proposition was hardly groundbreaking. This Court has long held that "[o]nce a defendant raises the defense of qualified immunity, the plaintiff bears the burden of establishing that the defendant has violated clearly established law." *See, e.g.*, *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993). And *Iqbal* itself addressed whether the plaintiff's complaint alleged "factual matter that, if taken as true, states a claim that petitioners deprived him of his clearly established constitutional rights," while at the same time recognizing

the availability of interlocutory qualified immunity appeals under the collateral order doctrine. 556 U.S. at 666, 672.

This Court has jurisdiction over this appeal.

## II. Defendants are entitled to qualified immunity on Plaintiffs' property interest claims.

Turning to the merits, Plaintiffs fail to demonstrate that they had a property right in continued employment at the time of their terminations, much less that the existence of a property right was clearly established.

In response to Defendants' argument that Plaintiffs lacked a property right even before KBOR's adoption of the Workforce Management Plan because they could be fired for reasons other than cause, including financial circumstances, Plaintiffs cite *Krotkoff v. Goucher College*, 585 F.2d 675 (4th Cir. 1978). But that case involved a state law claim for breach of contract, not a federal due process claim. *Id.* at 676-77 & n.1, 683. Plaintiffs have not identified any authority holding that government employees who can be fired for financial reasons have a property right to continued employment that entitles

them as a matter of federal due process to a hearing on whether those financial reasons justify their termination.

Plaintiffs argue that employees terminated for financial reasons have a right to challenge their terminations as a matter of substantive due process, Appellees' Br. at 23-24, but there are at least two problems with this argument. First, as the district court recognized, any substantive due process claim is predicated on the existence of a property right. App. III, 28; *see also Roberts v. Winder*, 16 F.4th 1367, 1375 (10th Cir. 2021). So this just begs the question of whether Plaintiffs had a property right to begin with. And even if they did, that right was validly suspended by KBOR's adoption of the Workforce Management Plan prior to their terminations, so they have no substantive due process claim that their terminations were arbitrary and capricious.[1]

_____

[1] Plaintiffs' argument appears to be that their terminations were arbitrary and capricious, Appellees' Br. at 23-24, not that KBOR's decision to adopt the Workforce Management Plan itself lacked a rational basis. To the extent they might argue that the Workforce Management Plan fails rational basis review (a claim they never raised below), the extreme financial pressures caused by the COVID-19 pandemic provided a rational basis for KBOR's action. While Plaintiffs question whether these cited reasons truly justified the plan, a

Second, any substantive due process claim depends on the property right being classified as fundamental. *See* Opening Br. at 33-34. Yet Plaintiffs make no argument why this Court should recognize a property right in continued employment as fundamental, contrary to the weight of authority from other circuits. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142-43 (3d Cir. 2000) (Alito, J.). And they certainly have not shown the fundamental nature of any property right to be clearly established.

In arguing that KBOR's adoption of the Workforce Management Plan did not validly extinguish whatever property rights they may have previously had, Plaintiffs attempt to distinguish the Kansas Supreme

_____

government policy satisfies highly deferential rational basis review if any "reasonably conceivable" rational basis exists. *Crider v. Bd. of Cnty. Comm'rs*, 246 F.3d 1285, 1289-90 (10th Cir. 2001) (explaining that the actual purpose or motivation is irrelevant). Indeed, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Plaintiffs admitted below that ESU was facing unresolved financial challenges and that its budgets had been reduced. App. II, 242-43. Even apart from the financial pressures of the COVID-19 pandemic, whether and when public employees should receive tenure or civil service protections is a policy question that government decisionmakers can rationally disagree on, not a matter dictated by federal substantive due process.

Court's decision in *Scribner v. Board of Education*, 419 P.3d 1149 (Kan. 2018), in several ways, but none are persuasive. First, they note that Kan. Stat. Ann. § 72-2259 (part of the statutory scheme at issue in *Scribner*) provided that "[n]othing in this act shall be construed to create any right, or to authorize the creation of any right, which is not subject to amendment or nullification by act of the legislature," and they argue that the lack of similar language in KBOR policies somehow alters the due process analysis. Appellees' Br. at 25. But *Scribner*'s holding was not dependent on the language of Kan. Stat. Ann. § 72-2259. Rather, the Kansas Supreme Court relied on the proposition, which it traced back to *Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441 (1915), that when the legislature modifies or eliminates a property right, the legislative process provides all the process that is due. *Scribner*, 419 P.3d at 1155.

*Scribner* also relied on cases from other jurisdictions applying this proposition in the context of the elimination of tenure or civil service protections for public employees. 419 P.3d at 1155-56. Those cases recognized "the general rule that the legislature, having created a statutory entitlement, is not precluded from altering or even

eliminating the entitlement by later legislation." *Id.* at 1156 (*quoting*

*Dibble v. Quinn*, 793 F.3d 803, 809 (7th Cir. 2015)). Kan. Stat. Ann.

§ 72-2259 was a reflection of this general rule, not the source of the

Kansas Legislature's authority to eliminate a property right.

    Likewise, while Plaintiffs argue that in *Scribner*, the public

received notice of the legislative change when the Kansas Senate

adopted the amendment and sent it to the House, Appellees' Br. at 25,

that also was not the basis for the Kansas Supreme Court's holding. *See*

*Scribner*, 419 P.3d at 1158 ("[Plaintiffs] argue the legislative process

gave them no notice or a hearing. But they do not cite any case in which

a court has imposed these notice and hearing requirements when

legislation that impacts a broad class of people caused the deprivation

. . . ."). Plaintiffs have provided no authority holding that KBOR was

required to provide more notice than Plaintiffs allege they received.

    Plaintiffs' primary notice argument continues to be that KBOR

was required to adopt the Workforce Management Plan and ESU's

framework under the Kansas Rules and Regulations Filing Act.

Appellees' Br. at 26-28. But they offer no response to Defendants' point

that policies relating to personnel matters and the internal

management of an agency were exempt from that Act, which is why the policies that Plaintiffs allege granted them tenure were not adopted as regulations or published with the Kansas Secretary of State in the first place. Opening Br. at 28 (citing Kan. Stat. Ann. § 77-415(b)(2)(B) (2021)).[2] Nor do Plaintiffs explain how a violation of state procedural requirements—even if that had occurred—would amount to a federal due process violation. *See* Opening Br. at 28-29.

Plaintiffs are also incorrect that this appeal turns on questions of fact. Appellees' Br. at 29. They twice cite the summary judgment standard, Appellees' Br. at 17-18, 29, but this is an appeal from the denial of a motion to dismiss. As the Supreme Court explained in *Iqbal*, determining whether a complaint sufficiently alleges a clearly established constitutional violation is a question of law "well within an

---

[2] Plaintiffs cite *Taylor v. Kansas Department of Health and Environment*, 305 P.3d 729 (Kan. Ct. App. 2013), as addressing a "no-overtime policy" and holding that policies that amount to regulations must be adopted in accordance with the Rules and Regulations Filing Act. Appellees' Br. at 27. But the Kansas Court of Appeals did not determine whether the Act applied to that policy. 305 P.3d at 735. And the policy was not internal. It was not about overtime by agency employees, but about whether overtime wages for outside patient caregivers would be covered by a welfare program. *Id.* at 732-33.

appellate court's core competency." 556 U.S. at 672-75. There is no factual dispute about the actions KBOR took in adopting the Workforce Management Plan and approving ESU's framework. Accepting the well-pleaded allegations in Plaintiffs' complaint as true, the question whether those actions were legally sufficient to remove whatever property rights Plaintiffs may have previously had (or whether it was clearly established that KBOR's actions were insufficient) is a question of law.

Defendants have already refuted Plaintiffs' argument that KBOR's action was administrative and therefore outside the scope of *Bi-Metallic* because the members of KBOR were appointed rather than elected. Opening Br. at 25. Plaintiffs make two other incorrect arguments why they believe *Bi-Metallic* does not apply. First, they argue that KBOR's action was administrative because it only temporarily suspended tenure protections. Appellees' Br. at 31-33. But they offer no reasoning why the temporary nature of a policy would affect whether it is legislative or administrative. After all, the Kansas Legislature could have changed course after *Scribner* and reinstated

tenure protections for K-12 teachers. The fact that the elimination of tenure was only temporary would not have made it any less legislative.

The distinction between policies that require notice and a hearing and those where the policy-making process provides all the process that is due turns on whether "the action has a limited focus (only a few people or properties are affected) and is based on grounds that are individually assessed." *Onyx Props. LLC v. Bd. of Cnty. Comm'rs.*, 838 F.3d 1039, 1046 (10th Cir. 2016). The temporary nature of a policy has no bearing on either of these factors. The "limited focus" inquiry goes to the number of individuals affected, not whether the policy is permanent or temporary. *Id.*; *Bi-Metallic*, 239 U.S. at 445-46.

Plaintiffs have identified no cases holding that a temporary suspension of a property interest is an administrative action that requires notice and a hearing. Rather, courts have applied the *Bi-Metallic* principle to laws that only temporarily suspended property rights. In *McMurtray v. Holladay*, 11 F.3d 499 (5th Cir. 1993), a Mississippi law temporarily exempted the personnel actions of a department from state personnel board procedures for a one-year period. *Id.* at 501. The Fifth Circuit held that this amounted to a

suspension of employees' property interests for the year and that the legislative process provided all of the process that was due. *Id.* at 503-04. The Mississippi Supreme Court reached the same conclusion regarding a similar law in *Hemba v. Mississippi Department of Corrections*, 998 So.2d 1003, 1008 (Miss. 2009). So too here.

Second, Plaintiffs argue that KBOR's action was administrative because tenured professors at Kansas universities constitute an "identifiable group." Appellees' Br. at 31-33. But the question under *Bi-Metallic* is whether the rule "applies to more than a few people," in which case "it is impracticable that everyone should have a direct voice in its adoption." 239 U.S. at 445. Due process requires notice and a hearing only when a "relatively small number of persons" are affected "upon individual grounds." *Id.* at 446.

Thus, the Seventh Circuit has held that the legislative process provided all the process that was due when the Illinois Legislature passed a law that eliminated the property rights of arbitrators under the Illinois Workers' Compensation Act. *See Dibble*, 793 F.3d at 808-14. Even though there were only twenty-nine arbitrator positions, and even though the Governor ultimately declined to reappoint only nine of them,

the Seventh Circuit held the action was legislative because "[t]he law applied generally to all sitting arbitrators, not just to particular individuals, and applied only prospectively." *Id.* at 806, 813. The Seventh Circuit has also held that an amendment to a town's zoning ordinance was legislative—despite the fact that it affected only one property—because it had a general application. *LC&S, Inc. v. Warren Cnty. Area Plan Comm'n*, 244 F.3d 601, 604-05 (7th Cir. 2001).

Here, the Workforce Management Plan applied to all employees at Kansas public universities. Even if the inquiry is limited to ESU's framework, it applied to all ESU employees. These policies were not limited to just a small number of individuals, and they applied generally, not to specific individuals based on individualized grounds. *See McMurtray*, 11 F.3d at 504 (noting that while twenty-nine individuals lost their jobs, the challenged law "was intended to affect *every* employee at the [department], which qualifies as a general class of people"). Accordingly, KBOR was not required to offer notice and a hearing before adopting the Workforce Management Plan or approving ESU's framework, which suspended whatever property rights Plaintiffs may have had in continued employment.

At the very least, *Scribner* and the cases on which it relied are not so distinguishable that it was clearly established KBOR's action was insufficient to eliminate Plaintiffs' property rights. Defendants are not raising this argument for the first time on appeal, as Plaintiffs claim. Appellees' Br. at 35-36. Defendants' briefing on the motion to dismiss and motion to reconsider cited both *Scribner* and *Bi-Metallic* to argue that the existence of a property right was not clearly established because KBOR validly eliminated whatever property right Plaintiffs may have had. App. II, 12-15, 274-75; III, 38-39, 48-52. Defendants even specifically argued that these cases could not be distinguished on the grounds that KBOR is an executive agency. App. III, 38, 49-50 (citing *Minn. State Bd. for Comm. Colls. v. Knight*, 465 U.S. 271, 283-85 (1984)). While the district court held that *Scribner* and *Bi-Metallic* could potentially be distinguished because they involved legislative action, while it was plausible KBOR's action was administrative, Plaintiffs have not shown that distinction to be clearly established here. They have therefore failed to meet their burden of overcoming Defendants' qualified immunity.

**III.  Defendants are entitled to qualified immunity on Plaintiffs' other claims because the complaint fails to plausibly allege their role in the asserted constitutional violations.**

Plaintiffs spend much of their response to Defendants' argument that the complaint fails to plausibly allege each Defendant's personal involvement in the remaining constitutional claims by reverting to their due process arguments. But, as explained above, the due process claims in Counts I through III fail because Plaintiffs lacked a clearly established property right at the time of their terminations, as does the conspiracy claim in Count X to the extent it is based on alleged due process violations. This argument relates to Plaintiffs' remaining equal protection, freedom-of-association, and liberty interest claims, as well the conspiracy claim in Count X to the extent it is based on alleged equal protection or liberty interest violations. Plaintiffs still have not explained how their complaint plausibly connects any of the Defendants other than President Hush to these alleged violations.

**A.    KBOR Defendants**

As discussed in Defendants' Opening Brief, the basis of Plaintiffs' equal protection and freedom-of-association claims rests on the selection

of which ESU faculty members would be terminated, but the complaint does not plausibly allege that the KBOR Defendants played any role in that decision. Opening Br. at 38-39. Plaintiffs respond that Carl Ice, a member of KBOR, asked President Hush about the impact of ESU's framework, and President Hush said that about seven percent of ESU's employees would be impacted. Appellees' Br. at 60. But this does not make it plausible that the KBOR Defendants even knew which specific employees would be terminated, much less personally participated in that decision.

Plaintiffs argue that Defendants failed to challenge their freedom-of-association claim below. Appellees' Br. at 61. Not so. In their motion to dismiss, Defendants argued that Plaintiffs failed to "identify *specific* actions taken by *particular* defendants" so as to "make clear exactly *who* is alleged to have done *what* to *whom*" and to "show that [each] Defendant personally participated in the alleged constitutional violation." App. II, 11-12, 15-16 (citing *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013), *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008), and *Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023)). This argument related to all of Plaintiffs' constitutional claims,

including their freedom-of-association claim. In fact, Defendants specifically argued that Plaintiffs failed to plausibly plead "that any individual defendant terminated any plaintiff's employment because the defendant believed a particular plaintiff was problematic, on the Faculty Senate Committee, having friction with the ESU administration, a policy stickler, a liberal, an advocate, a unionizer, a campus leader, or opposed to the Republican party," App. II, 12—a clear reference to Plaintiffs' equal protection and freedom-of-association claims.[3]

In response to Defendants' argument that the complaint offers nothing but conclusory allegations about a conspiracy to violate Plaintiffs' liberty interests or equal protection rights, Plaintiffs accuse Defendants of attacking their dismissed § 1985 conspiracy counts.

---

[3] Further, Defendants argued all of this to the district court after already pointing out in an earlier section of their briefing specific problems with the allegations against various Defendants, including that "[n]othing in plaintiffs' pleading show[s] that the KBOR defendants terminated plaintiffs' employment or caused" that termination, "Kevin Johnson and Steven Lovett . . . were only attorneys for ESU," and that "plaintiffs fail to connect Thomas's presence at . . . meetings with any action to terminate their employment." App. II, 9-11; *see also* App. II, 273-74.

Appellees' Br. at 47. But then they inconsistently go on to state that their § 1983 conspiracy allegations in Count X are partially premised on their Count IV (liberty interest) and Count VI (equal protection) claims. Appellees' Br. at 48-49. Plaintiffs' argument is therefore unclear. To the extent they are arguing that their Count X conspiracy claim is only premised on due process violations, that claim fails for the same reason as their other due process claims. To the extent they are arguing that the KBOR Defendants conspired to violate their equal protection rights or liberty interests, the claim fails because Plaintiffs fail to plausibly allege that the KBOR Defendants had anything to do with the selection of which professors would be terminated or what would be said about them in the process.

Plaintiffs argue that because KBOR adopted the Workforce Management Plan and approved ESU's framework, which allowed ESU to terminate Plaintiffs, the KBOR Defendants can be held liable for ESU's employment decisions under a conspiracy theory. But as Plaintiffs acknowledge, a conspiracy requires "an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th

Cir. 2021). And Plaintiffs have failed to "allege specific facts showing an agreement," *see Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998), between the KBOR Defendants and any ESU official to terminate Plaintiffs based on their protected associations. Nor have they alleged any facts showing an agreement about what would be said about Plaintiffs during the course of their terminations or what would be published to any other parties, which is the basis of Plaintiffs' liberty interest claim.

## B.    Brent Thomas

In addition to the allegations in their complaint (which Defendants have already addressed, *see* Opening Br. at 40-42), Plaintiffs claim that Brent Thomas may have informed President Hush about Plaintiffs' "alignment on issues that were disfavored by administration." Appellees' Br. at 55. Not only is that purely speculative, but it is also not alleged in Plaintiffs' complaint. Further, it does not plausibly suggest that Thomas was personally involved in the decision to terminate Plaintiffs, as required for Plaintiffs to adequately plead their equal protection, freedom-of-association, or conspiracy to

violate equal protection claims, nor does it have anything to do with an alleged conspiracy to violate their liberty interests.

Plaintiffs also argue that Thomas submitted affidavits during their administrative hearings, which they characterize as "sham statements on various academic programs." Appellees' Br. at 56. But their complaint nowhere makes allegations against Thomas based on these affidavits. App. I, 23-76. And in any event, submitting affidavits during litigation following a termination decision does not make it plausible Thomas was involved in those termination decisions.

Plaintiffs have not pled facts plausibly tying Thomas to the alleged constitutional violations.

## C. Kevin Johnson and Steven Lovett

While Plaintiffs spend many pages discussing the elements of their liberty interest claim, they offer no response to Defendants' argument that Johnson and Lovett did not "make" the statements in question and therefore did not violate Plaintiffs' liberty interests. Opening Br. at 44. At minimum, Plaintiffs identify no law clearly establishing that Johnson and Lovett's alleged assistance in preparing

their termination letters—which were signed by President Hush, not Johnson or Lovett—violated the Fourteenth Amendment.

Plaintiffs also fail to respond to Defendants' argument that attorneys who represent their clients in employment litigation are not personally responsible for the employment decisions of their clients under equal protection, freedom-of-association, or conspiracy theories. *See* Opening Br. at 42-46. Instead, they merely repeat the allegations of Johnson and Lovett's legal representation without identifying any law clearly establishing that this representation violated the Constitution. Johnson and Lovett are entitled to qualified immunity.

## CONCLUSION

The district court's judgment should be reversed, and qualified immunity should be granted to all Defendants in their individual capacities on Counts I through III and to all Defendants other than President Hush on the remaining Counts.

Respectfully submitted,

KRIS W. KOBACH
Kansas Attorney General

/s/ Dwight R. Carswell
Dwight R. Carswell
  *Deputy Solicitor General*
Matthew L. Shoger
  *Assistant Attorney General*
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
(785) 296-2215
dwight.carswell@ag.ks.gov
matt.shoger@ag.ks.gov

*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 4,091 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 10th Cir. R. 32(b), as calculated by the word-counting function of Microsoft Word.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface—14-point Century Schoolbook—using Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2025, the foregoing Reply Brief was electronically filed with the Clerk of the Tenth Circuit Court of Appeals using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: July 1, 2025      /s/ Dwight R. Carswell